COMMONWEALTH *vs.* AN UNNAMED DEFENDANT.

Plymouth. March 14, 1986. — May 21, 1986.

Present: GREANEY, C.J., CUTTER, & SMITH, JJ.

*Prostitution. Common Night Walker. Constitutional Law,* Equal protection of laws, Equal Rights Amendment. *Selective Prosecution. Evidence,* Selective prosecution.

In a proceeding on a motion to dismiss, where the evidence and uncontroverted affidavits before the judge supplied abundant proof of intentional police discrimination between female prostitutes and their male customers, the judge correctly dismissed two criminal complaints charging, respectively, that the female defendant "did unlawfully solicit or receive compensation for soliciting for a prostitute" and that she was "a common nightwalker." [235-236]

COMPLAINTS received and sworn to in the Brockton Division of the District Court Department on February 5 and February 22, 1985, respectively.

On appeal to the jury session of the Wareham Division, a motion to dismiss was heard by *John B. Leonard,* J.

*John P. Corbett,* Assistant District Attorney, for the Commonwealth.

*Kathleen A. Donahue* for the defendant.

CUTTER, J. This is an appeal by the Commonwealth from the dismissal of two complaints because of discriminatory enforcement of the applicable statutes. The first complaint charged (see G. L. c. 272, § 53A[1] and also § 53[2]) that the defendant on

[1] General Laws c. 272, § 53A, inserted by St. 1983, c. 66, § 2, reads: "Any person who engages, agrees to engage, or offers to engage in sexual conduct with another person in return for a fee, or any person who pays, agrees to pay or offers to pay another person to engage in sexual conduct, or to agree to engage in sexual conduct with another natural person may be punished by imprisonment in a jail or house of correction for not more than one year, or by a fine of not more than five hundred dollars, or by both such fine and imprisonment."

[2] General Laws c. 272, § 53, as appearing in St. 1983, c. 66, § 1, reads: "Common night walkers, common street walkers, both male and female,

February 4, 1985, in Brockton, "did unlawfully solicit or receive compensation for soliciting for a prostitute." A second complaint charged (G. L. c. 272, § 53) that on February 21, 1985, also in Brockton, the defendant was "a common nightwalker, habitually walking in the streets in the night-time for the purpose of prostitution." The defendant was convicted of both charges at a bench trial in the Brockton District Court and sentenced to two concurrent one-month terms in a house of correction. She appealed to the jury session of the District Court.

There she filed a motion to dismiss the complaints alleging discriminatory enforcement of the relevant statutes (see notes 1 and 2, *supra*). This motion was accompanied by an affidavit of the defendant and also by an affidavit of the defendant's counsel. The defendant's affidavit asserted that, when she was arrested, no male person was arrested with her on either charge, and that "the practice of the Brockton [p]olice [d]epartment is to arrest female prostitutes and to decline to arrest male customers and male prostitutes." Attached to her affidavit were four pages of lists of arrests by the Brockton police for prostitution, for soliciting prostitution, and for being a common nightwalker, showing the results set out in the margin, for a period of about one year.[3]

common railers and brawlers, persons who with offensive and disorderly acts or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior . . . and persons guilty of indecent exposure may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment."

[3] Arrests by Brockton police for prostitution and related offenses June 6, 1984, to May 10, 1985, were compiled (by a process described in the affidavit of the defendant's attorney) from police department computer records. These records, in summary, showed the following arrests:

|        | Prostitution | Solicit Prostitution | Common nightwalker |
|--------|:---:|:---:|:---:|
| Female | 36 | 23 | 104 |
| Male   | 1  | 2  | 2   |
| Total  | 37 | 25 | 106 |

The records also showed seventeen arrests for open and gross behavior — mostly for offenses such as indecent exposure. Only one of these arrests

A District Court judge (not the judge who had presided at the defendant's bench trials) held an evidentiary hearing on June 14, 1985. No opposing affidavits, filed in behalf of the prosecution, appear in the record appendix. See Mass.R.Crim.P. 13(a)(2) and (3), 378 Mass. 871-872 (1979).

One Brockton police detective, called by the defendant, testified[4] about the department's typical methods of surveillance of female suspects on certain streets in Brockton. These methods involve observation of (a) males in motor vehicles being waved at by females on the street, (b) the female entering the vehicle and driving off with the male, and (c) both returning after an interval, and then (d) a repetition of the process with a different male. The detective testified that, in such circumstances, "ordinarily" the police do not arrest the driver of the vehicle, or "radio ahead to another unit" to make an arrest. In cases where the vehicle is followed, and a "sexual act is [found] going on," only the female is arrested. This defendant, when the detective arrested her on February 4, 1985, was performing fellatio on the male then in the vehicle. The male was not arrested.

Defense counsel in an attempt further to show discrimination inquired about a later arrest of another alleged female nightwalker. Upon objection the judge praised the "candid and forthright" testimony of the detective, and said that the officer has "indicated that they're searching for female nightwalkers." In answer to an inquiry by the judge whether it was department policy not to arrest the male on prostitution related charges, the detective replied, "There hasn't been a male arrested . . . since we've been working on the prostitution area."

As to the offense of being a nightwalker charged as taking place on February 21, 1985, the detective testified that they saw "several males leaving with" the defendant "at different

---

was of a female. There were no arrests for adultery or fornication and one arrest of a male for "unnatural acts."

[4] The transcript of the hearing furnished to this court was faint and illegible. In the future, counsel should expect such transcripts to be rejected by the clerk. The panel expresses thanks to defense appellate counsel for attaching to her brief a readable copy of this transcript.

times." Not one of these males was arrested. On one occasion they "did radio ahead that the car in which . . . [the defendant] was a passenger was to be stopped." This was done. The male operator of the vehicle was not arrested.

On cross-examination, the prosecutor received one answer that when the detective made an arrest on "a soliciting charge and there's a male present . . . it's . . . general policy that you don't arrest the male." The detective stated the basic reason for the policy was that complaints from area citizens related "mainly [to] the girls," and that the women arrested are known to the police, whereas the males are not "familiar" to the police.[5]

1. In *Commonwealth* v. *King,* 374 Mass. 5, 15, 19-22 (1977), decided, of course, prior to the enactment of § 53A in 1983, the Supreme Judicial Court dealt under the earlier statutory law with somewhat the same situation now presented. The opinion (at 15) refers to "[p]rostitution" as comprising "conduct of all persons, male and female, who engage in sexual activity as a business," and c. 272, § 53, as applying "to male prostitutes as well as female prostitutes." It went on (at 16) to suggest that "even if the prostitution provision [of § 53] were held to apply only to women, it would not be considered discriminatory since there are other [statutory and common law] crimes which in essence charge males with the same offense under different wording." See, e.g., G. L. c. 272, § 35; but see also *Commonwealth* v. *Balthazar,* 366 Mass. 298, 300-302 (1974).

The opinion (at 16) then stated that the term "prostitution" did not "include the conduct of persons who hire . . . another to engage in sexual activity." It, on that account, did not accept the contention (by the female defendants in the cases then considered) that § 53 as thus defined "unconstitutionally criminalizes female conduct but not male conduct" in violation of art. 106 of the Amendments to the Constitution of the Com-

---

[5] Defense counsel's offer to put on another officer to corroborate the first detective's testimony was not accepted. The judge directed the discussion to whether there was a difference in the effect of the assertions of discrimination (based upon the sex of the participants) between (a) the charge of soliciting, and (b) the charge of being a nightwalker.

monwealth, the Equal Rights Amendment (ERA), adopted in 1976. The decision stated "that § 53 was designed to attack merely one phase of a problem," citing *Williamson* v. *Lee Optical of Okla., Inc.,* 348 U.S. 483, 489 (1955). As to discriminatory enforcement, the *King* opinion (at 17) said that the then defendants' contention (in the opinion of a majority of the court) "fails because they [the female prostitute defendants] presented no evidence to show that their customers were not arrested and prosecuted" and, particularly (at 18) "when there is no statutory provision for the prosecution of the customers."

After further discussion of art. 106 of the Amendments, the opinion concluded (at 19), "[A] female charged with prostitution or night walking would be entitled to a dismissal of the charges with prejudice on an appropriate showing that the police department or the prosecutor's office followed an unjustifiable policy of selective enforcement against female prostitutes and not male prostitutes" (subject to n.11 which pointed out that prosecution of males need not charge prostitution, but may charge related crimes).

The author of the *King* opinion (in a separate opinion) pointed out (at 23) that he would broaden the opinion to assert, citing *State* v. *Johnson,* 74 Wis. 2d 169 (1976), "that unlawful discrimination in enforcement can be proved by a showing that the police department or prosecutor's office followed an unjustifiable policy of prosecuting prostitutes and not their customers," which could be treated as sex-based on "a showing that most prostitutes are women and most customers are males."[6]

2. After the *King* case, 374 Mass. 5, was decided, the views expressed in the separate opinion in that case were given support by the 1983 statute, now found in c. 272, § 53A (see note 1, *supra*). The broad form of § 53A provided the statutory

---

[6] Later in the separate opinion (at 24) it was said, "If a police custom exists of invariably, and regardless of the circumstances, sending the male customer on his way while at the same time escorting the accused female prostitute into the police car or patrol wagon, this in my view departs from the purpose of the equal rights amendment, and may not even conform to the expressed legislative intention to control prostitution through the processes of the criminal law."

criminalization of acts of the prostitute's customers which was thought to be absent in the *King* case. We think that the somewhat "archaic" language of § 53, see *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 598-599 (1975), must now be read together with the clear words of § 53A in determining the present legislative intention. The evidence and uncontroverted affidavits (already summarized), before the judge on the motion to dismiss, abundantly supplied the proof of intentional discrimination between the female prostitute and her male customers, treated as lacking in the *King* case, 374 Mass. at 18-19.

3. We are of opinion that the judge correctly concluded that the proof made before him warranted dismissal of the complaints because they were the product of an "arbitrary or unequal application of impartial laws." *Commonwealth* v. *Franklin,* 376 Mass. 885, 894 (1978). There it was said (at 894, citations omitted): "Because we presume that criminal prosecutions are undertaken in good faith, without intent to discriminate, the defendant bears the initial burden of demonstrating selective enforcement . . . . [T]o meet this burden, the defendant must present evidence which raises at least a reasonable inference of impermissible discrimination . . . . The defendant must show [1] that a broader class of persons than those prosecuted has violated the law . . . [2] that failure to prosecute was either consistent or deliberate . . . and [3] that the decision not to prosecute was based on an impermissible classification such as race, religion, or *sex*" (emphasis supplied). We think each of the three mentioned requisites of the defendant's proof was satisfied by the material before the trial judge. See the requirement of "strict judicial scrutiny" under the State ERA mentioned in *Lowell* v. *Kowalski,* 380 Mass. 663, 666 (1980).

The opinion (in the *Franklin* case) then continued (at 895); "We stated as dictum in [the] *King* [case] and now we hold that once a defendant has raised a reasonable inference of selective prosecution, the Commonwealth must rebut that inference or suffer dismissal of the underlying complaint. At that point, and where it appears that the government is in ready possession of the facts, it is not unreasonable to require the

government to come forward with evidence and to make its records and evidence available." This the prosecution did not do in the present cases and thus nothing was before the judge (or now is before us even by affidavit) which controverts the essentially uncontradicted proof of police practices on which the judge relied. Compare *Commonwealth* v. *Franklin Fruit Co.,* 388 Mass. 228, 233 (1983), where, after reviewing significantly conflicting testimony about enforcement in Lynn of the Sunday closing laws, the Supreme Judicial Court concluded that "the defendant's evidence fails to raise a reasonable inference that any decision not to prosecute its competitors was based on a police policy not to enforce the laws unless a competitor complained."[7]

> *Order dismissing complaints affirmed.*

---

[7] A recent case dealing with § 53 is *Commonwealth* v. *Sefranka,* 382 Mass. 108, 117-118 (1980), interpreting one of its numerous provisions narrowly in order to preserve its validity from a charge of vagueness, but without (see n.10, at 118) limiting the offense of prostitution. See *Commonwealth* v. *Hackett,* 383 Mass. 888, 889 (1981), for an instance of inadequate proof of selective enforcement.