## COMMONWEALTH *vs.* KAREN LAFASO.

No. 98-P-1882.

Hampden. October 7, 1999. - April 28, 2000.

Present: PORADA, DREBEN, & BECK, JJ.

*Common Night Walker. Practice, Criminal,* Findings by judge. *Selective Prosecution. Evidence,* Selective prosecution.

A District Court judge correctly dismissed three complaints brought against a female defendant alleging she was a common night walker, where the defendant's evidence, showing that men who had violated the law were rarely investigated or prosecuted, that the failure to investigate or prosecute was consistent, and that the decision was based on gender, reasonably raised an inference of selective prosecution that was not rebutted by the Commonwealth's evidence. [182-184]

COMPLAINTS received and sworn to in the Holyoke Division of the District Court Department on July 31, 1997, October 9, 1997, and October 20, 1997, respectively.

Motions to dismiss were heard by *William B. McDonough,* J.

*James R. Goodhines,* Assistant District Attorney (*Bethany Lowe,* Assistant District Attorney, with him) for the Commonwealth.

*John L. Melanson* for the defendant.

BECK, J. The Commonwealth appeals from a District Court judge's order dismissing three complaints because of discriminatory enforcement. The complaints charged the defendant, Karen Lafaso, with common night walking in the city of Holyoke on July 30, October 9, and October 17, 1997, in violation of G. L. c. 272, § 53. We affirm.

The defendant claimed she was the victim of selective enforcement because "the male operator[s] of the vehicle[s] in which she was a passenger [were] not arrested nor charged with any offenses relating [to common night walking]." In support of

her motions to dismiss, which are dated February 5, 1998, the defendant submitted an affidavit of trial counsel setting forth the facts underlying each of the complaints against the defendant. Attached to the affidavit was a table of new cases for common night walking and prostitution filed in the Holyoke District Court during the four-month period from September 2, 1997, to December 31, 1997, noting in each case whether a male companion was also arrested. According to the table, of thirteen complaints for night walking or prostitution, only one customer appears to have been charged. A hearing on the motions began on February 12, 1998.

The Commonwealth called as witnesses the police officers who had arrested the defendant on July 30, 1997, and October 9, 1997. There was also extensive argument of counsel. The hearing was continued to April 8, 1998, when the officers who arrested the defendant on the third complaint testified. There was further argument of counsel. In addition, on April 8, the prosecutor submitted a counter affidavit based on a review that day of the district attorney's internal computer records for common night walking, prostitution, and various related offenses. The affidavit contains no summary or analysis of the records, which, at least as reproduced in the Commonwealth's record appendix, are difficult to decipher. See *Commonwealth* v. *An Unnamed Defendant*, 22 Mass. App. Ct. 230, 231 n.3 (1986) (arrests compiled by process described in affidavit of defendant's attorney). The data appear to show that in 1996 to 1998, twenty-four women and two men were charged with common night walking, including seven women who faced multiple complaints. (The defendant in this case is one of the seven women who faced multiple complaints.) There were twelve complaints for prostitution, ten against women and two against men. Seven men were charged with lewd and lascivious conduct, and two men were charged with procuring prostitution.

At the conclusion of the hearing, the judge allowed the defendant's motions and dismissed the complaints. Subsequently, on order of this court, the judge submitted written findings. The judge's findings rely entirely on the police officers' testimony and do not address the documentary evidence. On appeal, we include the affidavits in our analysis. See *Bruno* v. *Bruno*, 384 Mass. 31, 35 (1981) ("where documentary facts are not expressly adopted in the findings of the judge, an appellate court has no difficulty in considering those facts").

We summarize the judge's findings, supplemented by undisputed testimony. As to the first arrest at issue here, on July 30, 1997, Sergeant Michael J. McMullen saw the defendant walking on Elm Street between Essex Street and Appleton Street in Holyoke. She was waving and yelling to passing motorists. She got into a car with a male driver, they drove away, and she returned twenty minutes later. McMullen watched her briefly after her return and then arrested her. Although he could have "run[] a query on [the driver's] license plate" to obtain information about the driver, McMullen appears not to have done so. Not only did he not arrest the driver, he did not conduct an investigatory stop, or question the driver in any way. He testified that he never took out a complaint against the driver in these circumstances.

On October 9, 1997, Holyoke police Officer Jeffrey Joly saw the defendant get into a Ford Ranger pickup truck parked at the curb on Walnut Street, in the same general area as the first arrest. After the defendant got in, the Ranger drove away. Another officer stopped the truck, and apparently "[ran him] through records." The police identified the man and arrested him on an outstanding warrant. The defendant was arrested and charged with being a common night walker. No corresponding charge was made against the man.

About a week later, Officer Paul Barkham saw the defendant flagging down a car on Chestnut Street again in the same general area. She got into the car. The police stopped the car nearby, and arrested the defendant. The officer, who believed that the driver had picked up the defendant for prostitution, asked the driver if he knew the defendant. The driver admitted he did not know the defendant. Although the officer checked the driver's license, he did not take any notes about the identity of the driver. The driver told another officer at the scene that the defendant had asked for a ride. "[N]othing was done" about the driver.

In a fourth incident on January 15, 1998, the police responded to a disturbance on Pleasant Street. The defendant was in the middle of the street arguing with a man. The man told the police that he had solicited sex from the defendant and that she had taken his money but refused to perform. The police arrested the man and escorted the defendant home.

On the basis of these findings, the judge concluded that the "[d]efense has raised a reasonable inference that the Holyoke

[p]olice arbitrarily enforce" G. L. c. 272, §§ 53 and 53A. He observed that the defendant was arrested for being a common night walker on three occasions, and that even though "[t]he identity of the corresponding males was known or readily ascertainable," they were released without being charged. He found that "[t]he totality of the circumstances raises the inference of arbitrary enforcement . . . which [was not] rebutted."

Although the judge's findings are not entirely consistent with the testimony, the Commonwealth makes no claim that the judge's factual findings are in error. Essentially the Commonwealth claims that the judge misapplied the law pertaining to selective prosecution to the facts.

"We begin our review with the well-settled proposition that the judge's findings of fact are 'binding in the absence of clear error . . . and [we] view with particular respect the conclusions of law which are based on them.' " *Commonwealth* v. *Bottari,* 395 Mass. 777, 780 (1985), quoting from *Commonwealth* v. *Correia,* 381 Mass. 65, 76 (1980). "While the judge's ultimate findings of fact and rulings of law, as they bear on issues of constitutional dimension, are open for reexamination by this court, such ultimate findings are 'entitled to substantial deference by this court.' " *Commonwealth* v. *Bottari,* 395 Mass. at 780, quoting from *Commonwealth* v. *Bookman,* 386 Mass. 657, 661 n.6 (1982).

There is also a well-settled presumption "that criminal prosecutions are undertaken in good faith, without intent to discriminate." *Commonwealth* v. *Franklin,* 376 Mass. 885, 894 (1978). As such, the defendant bears the initial burden of presenting evidence "which raises at least a reasonable inference of impermissible discrimination." *Ibid.* To be successful, the defendant must show (1) "that a broader class of persons than those prosecuted has violated the law"; (2) "that failure to prosecute was either consistent or deliberate"; and (3) "that the decision not to prosecute was based on an impermissible classification such as race, religion, or sex." *Ibid.* "[O]nce a defendant has raised a reasonable inference of selective prosecution, the Commonwealth must rebut that inference or suffer dismissal of the underlying complaint." *Id.* at 895. See *Commonwealth* v. *An Unnamed Defendant,* 22 Mass. App. Ct. at 235.

At the District Court hearing, the Commonwealth argued that there was no selective prosecution because males who conduct

themselves as common night walkers are arrested just as women are, relying on the attachments to the Commonwealth's affidavit. On appeal, the Commonwealth relies on the presumption of regularity in prosecutorial decision making. The Commonwealth explains that the reason women in Holyoke are prosecuted for prostituting themselves, but their customers (also referred to as "johns") are not, is that cases against johns are more difficult to prove. It would be a stretch to conclude that the Commonwealth raised this issue below. But even if it did, the argument is not persuasive.

Section 53 of G. L. c. 272 prohibits the following conduct:

> "Common night walkers, common street walkers, both male and female, . . . persons who with offensive and disorderly acts or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior . . . and persons guilty of indecent exposure may be punished . . . ."

A person may be convicted as a night walker only "if he [or she] is 'abroad at night *attempting* to allure someone to illicit sexual intercourse' " (emphasis in original). *Thomes* v. *Commonwealth*, 355 Mass. 203, 207 (1969).

Section 53A of G. L. c. 272 provides:

> "Any person who engages, agrees to engage, or offers to engage in sexual conduct with another person in return for a fee, or any person who pays, agrees to pay or offers to pay another person to engage in sexual conduct, or to agree to engage in sexual conduct with another natural person may be punished . . . ."

The Commonwealth argues that the reason women are arrested for common night walking under G. L. c. 272, § 53, but men are not prosecuted under G. L. c. 272, § 53A, is that evidence of an offer to pay is required to prove a case under § 53A. However, § 53 also requires proof of "solicitation of people to have illicit sexual intercourse." *Thomes* v. *Commonwealth, supra. Commonwealth* v. *Boyer*, 400 Mass. 52, 53 n.1 (1987). The attempt to solicit may be proved by circumstantial evidence. *Commonwealth* v. *Proctor*, 22 Mass. App. Ct. 935, 935-936 (1986) (finding sufficient evidence of common night walking where the defendant was seen repeatedly standing

in an area frequented by prostitutes, conversing with male motorists, and getting into their vehicles). If proof of the solicitation in a case brought under § 53 may be had by circumstantial evidence, such evidence must also be sufficient to prove the agreement to pay in a § 53A case. See *Commonwealth v. Proctor*, 22 Mass. App. Ct. at 935; *Commonwealth v. Lavigne*, 42 Mass. App. Ct. 313, 317 (1997).

We need not here decide whether evidence that an individual male motorist, who, after conversing with a woman parading in an area frequented by prostitutes, allows the woman into his car, and drives off, would be sufficient to sustain a prosecution under § 53A. In this case, it is clear that the Holyoke police not only did not arrest the men who picked up the defendant, they made no effort to investigate or obtain additional evidence to support the prosecution of the defendant's clients or johns in general. The police officers had no difficulty defining johns. "A john is a male individual, usually one single male, inside a vehicle that would circle the area of Essex, Appleton, Elm and Walnut for the purpose of picking up ladies of the evening for prostitution." A john is "[t]he person looking for the nightwalkers." Yet they did little to act on this definition. The one incident in which a john was arrested initially involved a call about a "disturbance" and an altercation in the middle of the road.

There was no error in the judge's determination that the defendant "raised a reasonable inference of selective prosecution." *Commonwealth v. Franklin*, 376 Mass. at 895. The defendant's evidence showed that (1) men whom the police believed had violated the law were rarely investigated or prosecuted; (2) the failure to investigate or prosecute was consistent; and (3) the decision was based on gender. See *Commonwealth v. An Unnamed Defendant*, 22 Mass. App. Ct. at 235. See also *Wisconsin v. McCollum*, 159 Wis. 2d 184, 202-205 (1990) (at least part of the reason the police could not identify the men is that they were focusing on the women). The Commonwealth's evidence — the prosecutor's affidavit and the police officers' testimony — did not rebut the inference. Compare and contrast *Commonwealth v. An Unnamed Defendant*, 22 Mass. App. Ct. at 235-236.

> *Order allowing motion to dismiss affirmed.*