## Commonwealth *vs.* Orlando Montes
### (and three companion cases[1]).

No. 97-P-1782.

Hampden. January 14, 2000. - August 2, 2000.

Present: Laurence, Dreben, & Gelinas, JJ.

*Assault and Battery on Certain Public Officers and Employees. Resisting Arrest. Statute, Construction. Practice, Criminal, Instructions to jury.*

There was no merit to a criminal defendant's claim that the judge's instructions to the jury on reasonable doubt created a substantial risk of a miscarriage of justice. [791]

At the trial of complaints for assault and battery on police officers, the evidence of the defendant's conduct toward police officers, who were attempting to arrest another person they had observed committing a felony, warranted his conviction. [791-793]

A third party, charged with assault and battery on police officers, had no standing to assert a violation of the Fourth Amendment to the United States Constitution based on police officers' asserted actions in conducting a lawful arrest of another person. [793-794]

At the trial of complaints for assault and battery on police officers, the judge correctly refused to instruct the jury on defense of others, where there was no evidence that the police had used excessive force in effecting an arrest. [794-796]

There was no merit to a criminal defendant's claims that his motion for severance from the codefendants' trials should have been granted or that the prosecutor's opening and closing statements were improper. [796]

At the trial of complaints for assault and battery on police officers, the judge did not err in giving a supplemental instruction on a "recklessness" theory of assault and battery, where the evidence warranted the instruction. [796-797]

Complaints received and sworn to in the Springfield Division of the District Court Department on June 14, 1995.

The cases were tried before *William W. Teahan, Jr.,* J.

*Thomas E. Hagar* for Celestino Montes.

*Fred W. Sunderland, Jr.,* for Jesus Montes.

---

[1]Commonwealth *vs.* Celestino Montes, Commonwealth *vs.* Jesus Montes, and Commonwealth *vs.* Sonia Espinosa.

*Marjorie S. Soforenko* for Orlando Montes.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

*Aileen F. Cox,* for Sonia Espinosa, submitted a brief.

LAURENCE, J. Four defendants appeal from their convictions in the District Court on a number of counts charging sundry forms of assault and battery on police officers. All convictions stemmed from a violent incident that took place in and outside the defendants' home in Springfield on June 13, 1995. We agree with the Commonwealth that there is no merit in any of the defendants' appellate contentions and affirm all of the convictions. We address each defendant's arguments in turn after a brief recitation of the background facts.

1. *The incident.* The convictions all arose out of an effort by two Springfield police officers to arrest David Montes (not an appellant), whom they saw breaking windows in a vacant building. David fled as they approached to arrest him for the felony of malicious destruction of property valued at over $250.00. Having recognized David as a nearby resident, the officers drove to his home and within ten minutes found him sitting on the front porch surrounded by a large group of friends and family members. Supported by taunts, jeers, and profanities addressed to the police by the group, David refused to respond to the officers' request to speak with them at the curb. The officers called for back-up assistance, which arrived within minutes in the form of four additional police cruisers.

As the two original officers approached the house, David jumped up and ran toward the front door. Giving chase, one of the officers caught up with him at the door and together they tumbled into the front hallway. A chaotic scene and general melee ensued. Celestino Montes, David's father, jumped on the backs of the two officers as they attempted to handcuff David in the house. After a struggle, the officers managed to overpower and handcuff Celestino. Another officer attempting to control the crowd outside on the front lawn and sidewalk was pushed aside by Jesus Montes, who darted toward the house but was restrained and handcuffed at the porch as he wielded a pair of scissors while resisting the police.

After the police had placed David, Celestino, and Jesus in their cruisers, one officer attempted to explain what had happened to Orlando Montes, who had just arrived home. Orlando obscenely ordered him out of the house. As the officer was

crossing the front door threshold to leave, Orlando slammed the door on the officer's back, causing him to fall. Orlando began pushing the door against the officer's body as it lay trapped between the door and the door jamb. Officers outside the house responded to their colleague's cries for help and pushed inward against the door while Orlando resisted from the inside. Breaking through the door and its window, the police ran after a fleeing Orlando but were met by his mother, Sonia Espinosa, swinging a large shard of the broken window which she jabbed against the arms of two officers. Three other officers caught up with and finally subdued Orlando, who had a butcher's knife in his hand. Orlando and Sonia were then both arrested.

2. *Celestino Montes.* Celestino Montes advances three arguments, the first two of which are related. He claims that his motion to dismiss was improperly denied given what he describes as the "egregious misconduct" of the Springfield police in arresting David that precipitated his own actions. He also contends that he could not be found guilty of assault and battery on a police officer because, at the time of the alleged assaults and batteries, the police were not engaged in their duties as public officials as contemplated by G. L. c. 265, § 13D. Finally, he asserts that the trial judge's instructions on reasonable doubt created a substantial risk of a miscarriage of justice requiring the reversal of his convictions. This last assertion need not detain us, since the judge used the time-tested charge of *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850), supplemented by clarifying language which no reasonable juror could have misunderstood. See *Commonwealth* v. *Watkins*, 425 Mass. 830, 838-839 (1997).[2]

Taken together, Celestino's first two claims — while not expressly denominated as such — appear to constitute a challenge to the legal sufficiency of the Commonwealth's case. Restating his assertions somewhat charitably, the defendant's argument runs: (1) a conviction under G. L. c. 265, § 13D, requires proof that, at the time of any assault, a police officer was engaged in his official duties, (2) the warrantless arrest of David in his home was unlawful,[3] and so (3) no reasonable fact-

---

[2]We also reject Orlando Montes's similar exception to the same instruction. See page 797, *infra.*

[3]Celestino argues that David's arrest violated the Fourth Amendment because the police did not have a warrant, nor were there exigent circumstances

finder could have determined that police were engaged in their official duties at the time of the assaults here.[4]

In Massachusetts, as in the majority of jurisdictions, the common-law right to resist an unlawful arrest has been abolished. *Commonwealth* v. *Moreira*, 388 Mass. 596, 601 (1983). Moreover, there is little evidence that a common-law right ever inhered in third parties to assist another in resisting an unlawful arrest. See *Glover* v. *State*, 88 Md. App. 393, 407 (1991); *Detroit* v. *Smith*, 235 Mich.App. 235, 238 (1999); *St. Louis* v. *Treece*, 502 S.W.2d 432, 435 (Mo. App. 1973). In any event, if such a right ever existed, it likewise has been extinguished in the Commonwealth.

The only exception to this general rule applies to situations in which excessive force is used in making an arrest. *Commonwealth* v. *Moreira*, 388 Mass. at 601-602. In such a circumstance, an arrestee, on the basis of traditional principles of self-defense, may reasonably resist an officer's overzealous efforts to take him into custody. In any subsequent prosecution of the arrestee, self-defense must be pleaded as an affirmative defense, and the question of the reasonableness of the force used is a question for the factfinder.

to justify a warrantless entry into the home to effect the arrest, relying particularly on *Payton* v. *New York*, 445 U.S. 573, 583-590 (1980), and *Commonwealth* v. *Forde*, 367 Mass. 798, 804-806 (1975). Those cases are distinguishable, however, neither involving police observation of a felony in progress nor hot pursuit of the perpetrator. The Commonwealth, relying on *United States* v. *Santana*, 427 U.S. 38, 42-43 (1976) (where the Supreme Court held that "a suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper under [*United States* v.] *Watson*, [423 U.S. 411 (1976),] by the expedient of escaping to a private [home]"), championed the arrest on a hot pursuit justification. The motion judge agreed with the Commonwealth that the arrest was lawful, and that dismissal of the charges was not warranted. We agree, particularly under *Santana*, in which the justifications for the officers' actions were less compelling than those here because they had not actually observed the pursued defendant committing a crime. Nonetheless, we shall assume for the sake of argument that the arrest here was unlawful.

[4]As an initial matter, we note that this argument was not pressed at trial. While ordinarily claims may not be raised for the first time on appeal, see *Commonwealth* v. *Figueroa*, 412 Mass. 745, 752 (1992) (issues not raised at trial cannot be raised on appeal), a conviction premised on legally insufficient evidence always creates a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). If the Commonwealth's proof were fatally deficient, Celestino's convictions would have to be reversed, waiver principles notwithstanding. As we conclude, however, such is not the case here.

If Celestino's claim, therefore, were merely that he was entitled to assist David in resisting an unlawful arrest, our work would be easy. No such right exists. Moreover, there is no allegation of excessive force here. Celestino's point, however, at least as we have construed it, is more subtle: he asserts that making an unlawful arrest cannot constitute part of an officer's official duties, so that a conviction under § 13D would never be permissible in such circumstances.

We disagree. It is possible to imagine a situation in which a police officer's on-duty conduct has become so flagrantly divorced from any legitimate law enforcement function that she no longer may be deemed to be acting within the scope of her appointed office. In those circumstances, the public policy supporting an enhanced sentence (and, in theory, a concomitantly enhanced deterrent) for assaulting a public employee embodied by § 13D no longer would apply. A conviction under § 13D may well be barred in such a situation. Such, however, is not this case.

Even assuming for the sake of argument that a constitutional violation occurred here (see note 3, *supra*), the police conduct was still far from the sort of egregious abuse of authority that would be required to strip an officer's actions of their official character. Indeed, by all accounts, the Springfield police, though confronted by violent resistance, showed considerable restraint in their response. The Commonwealth's proof was sufficient as to all elements of § 13D.

In the alternative, if we interpreted Celestino's argument as a broad challenge to the validity of the complaints, no different outcome would result. In some instances, where the conduct of police or prosecutors with respect to a particular case is so outrageous or unfair that any ensuing criminal trial would debase the integrity of the judicial system, the sanction of dismissal has been applied. Cf., e.g., *Brady* v. *Maryland,* 373 U.S. 83, 87 (1963) (failure to surrender exculpatory evidence); *Commonwealth* v. *An Unnamed Defendant,* 22 Mass. App. Ct. 230, 235 (1986) (selective prosecution). For the reasons already stated, however, the police conduct here did not even begin to rise to that level of malfeasance. Further, even were the arrest of David a potential basis for dismissal of a complaint, Celestino would not be in a position to assert that claim in any event.

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously as-

serted." *Rakas* v. *Illinois*, 439 U.S. 128, 133-134 (1978), quoting from *Alderman* v. *United States*, 394 U.S. 165, 174 (1969). See *Commonwealth* v. *Gallant*, 381 Mass. 465, 470 n.4 (1980); *Commonwealth* v. *Morrissey*, 422 Mass. 1, 5-6 (1996). Remedies for Fourth Amendment violations can benefit only those whose own rights have been compromised, and "attempts to vicariously assert violations of the Fourth Amendment rights of others have been repeatedly rejected . . . ." *United States* v. *Salvucci*, 448 U.S. 83, 86 (1980). Under the Fourth Amendment, Celestino cannot reap any benefit to himself from the purportedly unconstitutional arrest[5] of his son. As just noted, even under Massachusetts law, one does not generally have standing to challenge claimed violations of another's constitutional rights. See *Commonwealth* v. *Morrissey*, 422 Mass. at 5-6. Any exceptions to this rule do not apply in Celestino's situation.[6]

3. *Jesus Montes.* Jesus Montes presents three issues. He

---

[5]The Fourth Amendment encompasses both unlawful searches and seizures (including arrests, see *Payton* v. *New York*, 445 U.S. at 585), but "[t]he cases discuss[ing standing] are for the most part concerned with searches rather than seizures." 5 LaFave, Search and Seizure § 11.3, at 120 (3d ed. 1996 & Supp. 2000). Though there are times when persons other than those whose constitutional rights have been violated may have standing to contest certain searches, see note 6, *infra*, "[a]s for seizure of a *person*, it is clear that one person lacks standing to object to the seizure of another." *Ibid.* (emphasis original). Compare *Commonwealth* v. *Manning*, 406 Mass. 425, 428 (1990) (in seeking to suppress evidence of their criminal conduct, defendants could not rely on unlawfulness of another's arrest that produced information upon which defendants were charged).

[6]Unlike current Federal law, Massachusetts has retained the "automatic standing" rule as to seizures of property to some extent by invocation of the greater protections of art. 14. See *Commonwealth* v. *Amendola*, 406 Mass. 592, 596-601 (1990). However, Celestino makes no claim under art. 14. See note 4, *supra*. Nevertheless, the Massachusetts rule, which allows a defendant to challenge the unlawful search of another's person or premises, would not assist Celestino even if asserted, because "the central premise of the automatic standing rule . . . [is] that the crime for which the defendant is convicted must have as an essential element of guilt, possession (either actual or constructive) at the time of the contested [police conduct]." *Commonwealth* v. *Garcia*, 34 Mass. App. Ct. 386, 390 (1993). See *Commonwealth* v. *Amendola*, 406 Mass. at 601 & n.4; *Commonwealth* v. *Frazier*, 410 Mass. 235, 243-244 (1991); *Commonwealth* v. *Montanez*, 410 Mass. 290, 301 (1991); *Commonwealth* v. *Santaliz*, 413 Mass. 238, 240 n.5 (1992); *Commonwealth* v. *Carter*, 39 Mass. App. Ct. 439, 441-442 (1995), *S.C.*, 424 Mass. 409 (1997). Such a rationale is inapplicable here. Nor would Celestino have "target standing," which allows a defendant to challenge the violation of a third party's

argues primarily that the judge should have instructed the jury on defense of others with respect to the charges against him.[7] However, that defense is inapposite to the instant situation. As just discussed, absent police use of excessive force, the law of

constitutional rights when that violation was ultimately aimed at getting information to be used against the defendant. Target standing is not recognized as a matter of Federal constitutional law, see *Rakas* v. *Illinois*, 439 U.S. at 133-138, and, unlike automatic standing, Massachusetts has not explicitly adopted target standing as a matter of State constitutional law. See *Commonwealth* v. *Manning*, 406 Mass. at 429; *Commonwealth* v. *Scardamaglia*, 410 Mass. 375, 377-380 (1991). This is so, in part, because "[i]n the normal course, we regard the dismissal of charges against the person whose rights were primarily violated to be a sufficient deterrent to improper police conduct. The United States Supreme Court agrees with this reasoning. See *Rakas* v. *Illinois*, [439 U.S. at 137]; *Alderman* v. *United States*, 394 U.S. 165, 174-175 (1969)." *Commonwealth* v. *Manning*, 406 Mass. at 429. See also *Commonwealth* v. *Scardamaglia*, 410 Mass. at 380. The fact that we have no information as to the proceedings in, or the outcome of, the case against David Montes, who was apparently tried as a juvenile and whose case is not before us, does not change the fact that Celestino cannot assert any rights David may have had. "There is no reason to think that a party whose rights have been infringed will not . . . have ample motivation [and opportunity] to [seek a remedy] . . . . [e]ven if such a person is not a defendant in the [present] action . . . ." *Rakas* v. *Illinois*, 439 U.S. at 134. Furthermore, as in *Commonwealth* v. *Manning*, there is no evidence that Celestino was the target of the police or that the police sought to violate David's rights in order to get to him. See *Commonwealth* v. *Manning*, 406 Mass. at 429-430. Finally, the concept of "derivative standing" does not apply. Derivative standing permits a defendant "to object to the admission of evidence obtained in violation of the Fourth Amendment rights of a codefendant." 5 LaFave, Search and Seizure § 11.3(i), at 219 (3d ed. 1996 & Supp. 2000). This principle has been rejected by the Supreme Court of the United States, see *id.* at 219-226 (reviewing cases), and has no greater vitality in this Commonwealth. The defendants in *Commonwealth* v. *Manning* argued the point, and the court dismissed the argument without discussion because the individual whose constitutional rights had been violated was not a codefendant, see *Commonwealth* v. *Manning*, 406 Mass. at 430, which is also the situation here. Despite the fact this case presents the perhaps unique scenario of a father seeking to assert his son's constitutional rights, "the contention that standing exists because the defendant is in some sort of interpersonal relationship with the person who was actually the victim" has been "uniformly rejected." LaFave, *supra* at § 11.3(i), at 223. Thus, Celestino has no standing under any of the available theories.

[7] The judge instructed the jury that they could consider the defense of defense of others only with respect to Celestino Montes and two other individuals involved in the brawl in the house, Daisy Montes and Carmen Claudio. As we have observed, the judge thereby conferred on these defendants an undeserved benefit.

the Commonwealth does not permit an arrestee, or any third party allied with the arrestee, to resist even an unlawful arrest. Because there was no contention, much less evidence, that police used excessive force here, the judge properly refused to give the instruction requested by Jesus.

Likewise, Jesus's two subsidiary claims need little discussion. His assertion that his motion for a severance should have been granted is not supported by either reasoned argument or any demonstration of prejudice to him or abuse of discretion on the part of the judge in denying the motion.[8] His contention that certain isolated comments to the jury by the prosecutor in closing argument and by Sonia Espinosa's counsel in opening statement violated his right to remain silent under both the Federal and Massachusetts Constitutions ignores the contexts of both comments and is meritless, particularly in light of the judge's clear and emphatic instructions on the presumption of innocence and on Jesus's right not to testify.[9]

4. *Sonia Espinosa.* Sonia Espinosa's sole claim on appeal is that the judge erred in giving a supplemental instruction on a "recklessness" theory of assault and battery. We see no error

[8]Jesus does not contest that the minimum requirements for joinder were met, see Mass.R.Crim.P. 9(b), 378 Mass. 860 (1979), but claims that he was prejudiced by being tried along with the other defendants. He states in conclusory fashion that the "cumulative effect of the evidence [was] prejudicial," but he has failed to assert any claim of prejudice "so compelling that it prevent[ed] [the] defendant from obtaining a fair trial," *Commonwealth* v. *Moran*, 387 Mass. 644, 658 (1982), and we see none. The defendants did not have mutually antagonistic defenses. Nor is it prejudicial that this defendant was a relatively minor figure in the events described at trial or that he did not testify on his own behalf, whereas other defendants did. See *Commonwealth* v. *Cepulonis*, 374 Mass. 487, 499 (1978) (no abuse of discretion in denying motion to sever where only one of two codefendants testified). We see no reason to disturb the judge's discretionary decision, see *ibid.*, to deny the motion to sever.

[9]In context, it is quite clear that the prosecutor's aspersions on the defense evidence (which he was entitled to make) referred to the other defendants, not to Jesus; while the opening statement by Sonia Espinosa's counsel (that the jury would hear a "different picture" with respect to each defendant) simply informed the jury that each defense attorney would be forcefully presenting his own client's individual circumstances and defense. Sonia's counsel's comment should be contrasted with the successfully challenged statements in *De Luna* v. *United States*, 308 F.2d 140, 142-143 n.1 (5th Cir. 1962), mistakenly relied on by Jesus, which involved a testifying codefendant explicitly putting the entire blame for the crime on the other codefendant and asking the jury to draw invidious and adverse inferences from the latter's failure to testify, and thus were unmistakably prejudicial.

with respect to either Sonia Espinosa or Orlando Montes, who makes the same claim.[10] The instruction was warranted by the evidence presented against both Sonia Espinosa (who swung a large shard of broken glass wildly around, wounding two officers) and Orlando (who tried to crush a prostrate officer and resisted arrest with a butcher knife) and in no way vitiated the theories of their defense.

5. *Orlando Montes.* Orlando Montes claims error only as to the judge's reasonable doubt instruction and the supplemental reckless assault and battery instruction. Those assignments fail, as explained elsewhere herein (see page 791 and notes 3 & 10).

*Judgments affirmed.*

---

[10]Orlando Montes's counsel objected to the instruction, so that the issue on review is whether the instruction, if erroneous, substantially affected the jury verdict. See, e.g., *Commonwealth* v. *Alphas*, 430 Mass. 8, 13-14 n.7 (1999). Sonia Espinosa's attorney did not object to the instruction, and thus we assess whether the error, if any, amounted to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. at 564. Because we find that the instruction was not erroneous, we need not undertake an analysis under either standard.