COMMONWEALTH *VS.* JOHNNIE L. ALBERT
(and a companion case[1]).

No. 99-P-722.

Suffolk. September 15, 2000. - April 20, 2001.

Present: LENK, DREBEN, & GILLERMAN, JJ.

*Probable Cause. Search and Seizure,* Probable cause, Standing to object. *Controlled Substances. Conspiracy. Evidence,* Certificate of drug analysis, Cumulative evidence.

.

A criminal defendant charged with conspiracy to traffic in cocaine had no standing to challenge the arrest of a codefendant or the seizure of drugs from her person. [379]

Evidence at the trial of conspiracy indictments was sufficient to prove beyond a reasonable doubt that the object of the conspiracy was to traffic in cocaine and in an amount in excess of twenty-eight grams. [381-384]

At the trial of indictments for conspiracy to traffic in cocaine, the judge's instructions to the jury, including an instruction regarding the prima facie evidence of the certificate of analysis, created no substantial risk of a miscarriage of justice; further, no unanimity instruction was required. [384-385]

INDICTMENTS found and returned in the Superior Court Department on January 2, 1997.

A pretrial motion to suppress evidence was heard by *Catherine A. White,* J., and the cases were tried before *Robert A. Mulligan,* J.

*James R. Knudsen* for Christopher Burnett.

*Lisa J. Steele* for Johnnie L. Albert.

*Cathryn A. Neaves,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. Acting on an anonymous tip, Boston police officers, on June 29, 1996, followed a blue truck to a Dunkin' Donuts shop in Revere. The driver and the passenger, one Carla Shaw,

---

[1]Commonwealth *vs.* Christopher Burnett.

were known to the police as drug users.[2] Soon after Shaw went to a nearby phone booth, a red truck approached the blue vehicle. The officers, experienced in drug investigations, observed Shaw's hand go into the driver's side window of the red truck and come out in what they considered a drug transaction. After they followed the trucks, one of the officers saw the red truck's license plate and recognized that the red truck had a prior connection to drugs. When the trucks took different routes, the officers followed the blue truck and stopped it in Boston. The officers ordered the occupants out and noticed Shaw had a suspicious bulge under her shirt in "the top portion of her chest," which turned out to be eighty bags of crack cocaine.[3] Some months later, as the result of the cooperation of one Kathleen Gatta, who was arrested on an unrelated charge and who had been induced to sell drugs by the defendants, codefendants Carla Shaw, Johnnie L. Albert, and Christopher Burnett were indicted and subsequently convicted of conspiracy to traffic in cocaine in an amount of twenty-eight grams or more.[4]

In this appeal by Albert and Burnett, the defendants assert the following: Albert claims that Shaw's arrest was illegal both because there was no probable cause to arrest her and because Boston police had no jurisdiction to stop her in East Boston for a crime they had observed in Revere. Burnett claims he was entitled to a required finding of not guilty because there was neither sufficient evidence to support the finding that the conspiracy involved cocaine nor that the amount was twenty-eight grams or more. He also argues the trial judge erred (1) by not charging the jury that the Commonwealth was required to prove that the defendants conspired to possess at least twenty-eight grams of cocaine on a single occasion, and (2) by impermissibly focusing on the certificate of analysis of the amount seized from Shaw in June, 1996, a time prior to Bur-

[2]Neither is involved in this appeal. Shaw was a codefendant and convicted at trial.

[3]Shaw was arrested, and later that evening Albert was seen driving the red truck in East Boston. He consented to a search, and no drugs were found.

[4]Other charges against Albert and Burnett were either dropped pursuant to the Commonwealth's filing of a nolle prosequi or were filed with the defendants' consent.

nett's joining the conspiracy. We affirm the conviction of each defendant.

1. *Albert's appeal.* Albert's appeal can be disposed of simply on the basis that he has no standing to raise the invalidity of Shaw's arrest and the seizure of drugs. *Commonwealth* v. *Morrissey*, 422 Mass. 1, 5 (1996). See *Commonwealth* v. *Montes*, 49 Mass. App. Ct. 789, 794 (2000). He was not tried for trafficking but rather for conspiracy. Since possession of cocaine is not an essential element of the conspiracy charge, he does not have automatic standing to challenge the search as it relates to the alleged conspiracy. *Commonwealth* v. *Frazier*, 410 Mass. 235, 245-246 (1991).[5] That the Commonwealth did not raise the question of standing at the hearing on the motion to suppress[6] or that the judge denied the motion on different grounds does not preclude us from affirming the ruling on the basis of standing. See *Commonwealth* v. *Cruz*, 430 Mass. 838, 844 (2000); *Commonwealth* v. *Va Meng Joe*, 40 Mass. App. Ct. 499, 503 n.7 (1996), *S.C.*, 425 Mass. 99 (1997).

There are also additional grounds for denying the motion to suppress. The motion judge's conclusion that Shaw's arrest was valid based upon *Commonwealth* v. *Kennedy*, 426 Mass. 703 (1998), is supported by her findings, albeit sparse, see *Commonwealth* v. *Lanoue*, 392 Mass. 583, 586 n.2 (1984), and the evidence adduced at the hearing on the motion to suppress.

Although, unlike *Commonwealth* v. *Kennedy*, there was no evidence that the Dunkin' Donut shop was in a high crime area, the police had probable cause to arrest Shaw on the basis of a

---

[5]Had Albert been tried on both the trafficking and the conspiracy charges, he would have had standing to challenge the search as it related to the trafficking charge but not the conspiracy charge. *Commonwealth* v. *Frazier*, 410 Mass. at 245-246.

[6]Albert claims he was blind-sided by the Commonwealth's raising the issue of standing for the first time on appeal. Intimating that he might be able to show that he was the owner or co-owner of the blue truck, he claims he is entitled to an evidentiary hearing on this point. Ownership of the blue truck would not, however, give Albert standing. As indicated, the charge was conspiracy for which Albert does not have automatic standing, see *Frazier*, *supra*. Moreover, the privacy right intruded upon was not his, but rather Shaw's interest as a motorist to be free "from random, unauthorized, investigatory seizures" and her interest in not having her person searched. See *United States* v. *Powell*, 929 F.2d 1190, 1195 (7th Cir.), cert. denied, 502 U.S. 981 (1991) (citation omitted).

reasonable belief that an arranged drug transaction had occurred between a known drug user and a person driving a truck involved in a prior drug transaction.[7,8]

Nor were the police required to arrest Shaw immediately in Revere. Police have no constitutional duty to stop an investigation "the moment they have the minimum evidence to establish probable cause . . . ." *Commonwealth* v. *Piso,* 5 Mass. App. Ct. 537, 541 (1977), quoting from *United States* v. *Hoffa,* 385 U.S. 293, 310 (1966). It was only after the officers followed the trucks that one of the officers saw the red truck's license plate and became aware of the truck's prior connection to drugs. Moreover, "probable cause to arrest, once formed will continue to exist for the indefinite future, at least if no intervening exculpatory facts come to light." *Commonwealth* v. *Walker,* 370 Mass. 548, 560, cert. denied, 429 U.S. 943 (1976), quoting from *United States* v. *Watson,* 423 U.S. 411, 449 (1976) (Marshall, J., dissenting). Contrary to Albert's contention, there was nothing improper in the police keeping the blue truck under surveillance as it traveled to Revere, observing what happened there, and following the truck back to Boston where the police had jurisdiction to arrest Shaw.

2. *Burnett's appeal.* The primary testimony against Burnett came from Kathleen Gatta, a woman who, because of her addiction to cocaine and her purchases on credit from Albert, became indebted to him, and was induced by him to sell cocaine. In the beginning, she dealt with Albert and Shaw and, after September, 1996, with Burnett, as well. During a period of a month or so, Gatta met Burnett two, three, or four times a day to pick up cocaine or to pay him money. Finding herself more and more trapped by her debts to Albert and Burnett and threatened by them if she did not pay, Gatta, when arrested in

---

[7]The anonymous tip did not meet the *Aguilar-Spinelli* standard, and was not relied on as the basis for the stop or for Shaw's arrest. See *Aguilar* v. *Texas,* 378 U.S. 108 (1964); *Spinelli* v. *United States,* 393 U.S. 410 (1969).

[8]Even if the circumstances were viewed as not justifying an arrest, the police were entitled to stop the vehicle, see *Terry* v. *Ohio,* 392 U.S. 1, 21 (1968); *Commonwealth* v. *Moses,* 408 Mass. 136, 140 (1990), and to ask Shaw to get out. See *Commonwealth* v. *Riche,* 50 Mass. App. Ct. 830, 833 (2001) (drug offense in motor vehicle implicates possibility of guns). Once they saw the suspicious bulge on Shaw's chest, they had probable cause to search and arrest her.

November on an old larceny charge, told police of the drug operation. Albert, Burnett, and Shaw were subsequently arrested.

a. *Sufficiency of evidence.* The linchpin of Burnett's argument that there was insufficient evidence to show that the object of the conspiracy was to traffic in cocaine and in an amount in excess of twenty-eight grams is that he did not join the conspiracy until September, 1996. For this reason, he claims, the evidence of the certificate of analysis of the drugs seized from Shaw on June 29, 1996, cannot be the basis of proving the object of the conspiracy. The certificate of analysis of the eighty bags was introduced in evidence without objection and showed that the eighty bags contained cocaine weighing slightly more than thirty-five grams. Without this evidence, the argument goes, there was no showing that the parties conspired to possess twenty-eight grams. A corollary of his argument is that the Commonwealth is required to show possession of twenty-eight grams on a single occasion, rather than an aggregate of amounts possessed at different times.

Since there was no objection to the introduction of the certificate, the standard of review is whether there was "a serious and obvious error creating a substantial risk of a miscarriage of justice." *Commonwealth* v. *Pares-Ramirez*, 400 Mass. 604, 609 (1987). For purposes of discussion, we accept as valid that Burnett only joined the conspiracy in September, 1996, the time when Gatta began receiving drugs from him.[9] This is not dispositive, as usually "a conspirator is held to adopt the acts of his co-conspirators which occurred prior to his entry into the conspiracy." *Commonwealth* v. *Stasiun*, 349 Mass. 38, 50 (1965), citing *Commonwealth* v. *Rogers*, 181 Mass. 184, 193-194 (1902). Indeed, even "[t]he date when a conspiracy is alleged to have begun is not, in effect, a wall behind which the court and jury may never look for the purpose of discovering facts that have a bearing upon the fact of the conspiracy itself." *Stasiun*, *supra* at 50, quoting from *Commonwealth* v. *Beal*, 314 Mass. 210, 227 (1943). Nevertheless, if the sole evidence of an

[9]The only evidence suggesting earlier participation in the conspiracy is Gatta's testimony that sometime before she met Christopher Burnett in September, 1996, Albert told her that he had a partner, Chris, who was shortly to be released from prison.

agreement to traffic in the amount set forth in the indictment was the June shipment and the evidence showed that only one or two grams were involved after the time Burnett joined the conspiracy, we would have serious doubts whether the Commonwealth had sustained its burden of proof.[10]

The June seizure, however, was not the only, or even the most important, evidence of the object of the conspiracy. There was compelling evidence occurring after Burnett joined the conspiracy from which a jury could find that the object of the conspiracy was to sell cocaine in large quantities, quantities in excess of twenty-eight grams.

The evidence, in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979), was that Gatta, who saw Burnett four or five times a week for a month or so, asked for and received in a given twenty-four hour period two, three, or four deliveries of fifteen "20s"[11] from Burnett. A notebook belonging to Shaw showing drug transactions for a two-day period in November, 1996, indicated that she sold at least three sets of fifteen (i.e., forty-five) "20s" on each of those two days, the same period during which Gatta was receiving drugs for sale from Burnett.[12] A jury could properly infer that Burnett and his coconspirators possessed at one time the supplies sold on a single day. On the days covered by the notebook such amount could reasonably be

---

[10]We note that the Federal analogue, whose logic is comparable to that of G. L. c. 94C, § 32E, namely "increasing penalties for increasing quantities of increasingly dangerous drugs," see *Commonwealth* v. *Rodriguez,* 415 Mass. 447, 454 (1993), quoting from *Commonwealth* v. *Maracic,* 18 Mass. App. Ct. 722, 724 (1984), does not, barring unusual circumstances, permit prior drug transactions of coconspirators to be included as relevant conduct of a defendant for which he can be held accountable at sentencing. *United States* v. *O'Campo,* 973 F.2d 1015, 1023 (1st Cir. 1992). *United States* v. *Petty,* 982 F.2d 1374, 1377 (9th Cir. 1993). *United States* v. *Carreon,* 11 F.3d 1225, 1230-1238 (5th Cir. 1994). Commentary to Federal Sentencing Guidelines, 18 U.S.C. § 1B1. 3, Application Notes, n.2 (1994).

[11]A "20" is a $20 bag of cocaine. There was evidence that the bags seized in June were $20 bags, and the total weight of the eighty bags was thirty-five grams. Thus, each bag weighed approximately .4375 grams.

[12]In addition, Gatta told of receiving a large rock of cocaine from Albert in the fall, but did not give the exact date of the receipt.

inferred to be more than thirty-nine grams.[13] Such aggregation of drugs possessed by the conspirators at one time is permissible. *Commonwealth* v. *Cuffie,* 414 Mass. 632, 638-639 (1993). *Commonwealth* v. *Ortiz,* 431 Mass. 134, 138 (2000). *Commonwealth* v. *Rivera,* 40 Mass. App. Ct. 308, 312-313 (1996).

Gatta was experienced in the use of cocaine, and her testimony that the drugs given her by the conspirators were cocaine warranted the jury's finding that the substance the defendants intended to sell was cocaine. In addition, an experienced police officer testified that the entries in Shaw's notebook indicated that cocaine was involved. See *Commonwealth* v. *Cantres,* 405 Mass. 238, 245-246 (1989), holding that a substance may be identified as a particular drug by an experienced drug user or through testimony of experienced police officers without laboratory analysis.

In sum, since evidence other than the certificate showed that the amounts possessed by the coconspirators significantly exceeded twenty-eight grams and that cocaine was the drug involved, the certificate was merely cumulative. Even if its introduction without some limitation was erroneous, there was no substantial risk of a miscarriage of justice.

Although, as indicated, the jury were warranted in finding apart from the certificate that Burnett and his coconspirators "possessed" more than twenty-eight grams at one time, the Commonwealth did not need to prove that the substances sold were actually cocaine or that twenty-eight grams were actually possessed by the conspirators on one occasion.[14] *Commonwealth* v. *Cantres,* 405 Mass. at 243-244. The defendants were not tried

---

[13]If three sets of fifteen (forty-five) "20s" sold by Gatta are added to the three sets sold by Shaw, ninety bags x .4375 39.375 grams. See note 11, *supra.* If four sets of fifteen "20s" were sold by Gatta and these are added to the three sets sold by Shaw, 105 bags would have been sold, an amount exceeding forty-five grams.

[14]Such a requirement may apply to trafficking. See *Commonwealth* v. *Diaz,* 383 Mass. 73, 82-85 (1981); *Commonwealth* v. *Ortiz,* 431 Mass. at 138-139. For Federal sentencing purposes, aggregation of several transactions appears permissible, see Commentary to Federal Sentencing Guidelines, 18 U.S.C. § 2D1.1, Application Notes, n.12 (1995), both in cases of trafficking, see, e.g., *United States* v. *Sepulveda,* 15 F.3d 1161, 1196-1197 (1st Cir. 1993), cert. denied, 512 U.S. 1223 (1994), and in cases of conspiracy. See, e.g., *United States* v. *Rivera-Maldonado,* 194 F.3d 224, 228 (1st Cir. 1999).

for trafficking but rather for conspiracy. As stated in *Cantres* at 244, quoting from *Attorney Gen.* v. *Tufts*, 239 Mass. 458, 493-494 (1921), "The heart of a conspiracy is the formulation of the unlawful agreement or combination." The Commonwealth did not have to prove an overt act, but only had to prove that the defendants combined with the intention to commit the object crime. The evidence was sufficient for the jury to find that the Commonwealth met its burden of proof.

b. *Judge's instructions.* The trial judge first discussed the offense of trafficking in order for the jury to understand the object of the conspiracy. In doing so he stated that for trafficking, the Commonwealth had to prove, among other things, that the substance possessed was cocaine and that it weighed twenty-eight grams or more. He then referred to the certificate stating:

> "If you accept the evidence, then you are permitted, but not required, to conclude that the substance is in fact cocaine. . . .
>
> "This particular certificate says 80 plastic bags, 35.07 grams, 85 percent cocaine. . . . [I]t's prima facie evidence of the composition and quality, quality meaning the purity. Composition meaning that it's cocaine. It's also prima facie evidence of the weight."

He then pointed out that the defendants were being tried for conspiracy, not trafficking and that for the conspiracy charge the Commonwealth had to prove the defendants joined in an agreement and that the purpose of the agreement was to commit the crime of trafficking in cocaine.

We reject Burnett's argument that the judge's discussion of the certificate precluded the jury from considering other evidence. Moreover, there was no objection to this portion of the charge; the only objection Burnett made was the failure of the judge to include an instruction that the jury could not aggregate the various quantities of drugs but were required to find possession of twenty-eight grams on one occasion. Even if the judge's emphasis on the certificate was improper, there was no substantial risk of a miscarriage of justice. No serious issue was raised at trial as to the weight or extent of the various transac-

tions in which Burnett was involved or which were shown by Shaw's notebook. "In our view, no reasonable fact finder could have concluded that, if the defendants were [guilty of a conspiracy to traffic in cocaine, the amount] was less than [twenty-eight] grams." *Commonwealth* v. *Martinez*, 37 Mass. App. Ct. 948, 951 (1994) (applying standard of review of prejudicial error as in that case, unlike here, there had been a proper objection).

Burnett's remaining contentions are without merit. As indicated, since the charge was conspiracy, Burnett was not entitled to an instruction that there be no aggregation of the various transactions, nor was he entitled to sever his trial from that of the other coconspirators. No unanimity instruction was required because a conspiracy refers to a continuing course of conduct, rather than a succession of clearly detached incidents. See *Commonwealth* v. *Cerveny*, 387 Mass. 280, 288 (1982).

*Judgments affirmed.*