NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-851

COMMONWEALTH

vs.

JONATHAN M. MADDOCKS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Boston Municipal Court, the defendant, Jonathan M. Maddocks, was convicted of assault and battery on a police officer.[1]  He argues on appeal that the evidence at trial was insufficient to warrant a guilty finding, he was entitled to a jury instruction on self-defense, and police officers lacked reasonable suspicion to stop and seize him.  We affirm.

Background.  1.  Commonwealth's case.  The evidence put on by the Commonwealth included the following.  On May 21, 2023, Boston Police Officers Malik Morgan and Crefton Watty-Niles were

---

[1] The jury found the defendant not guilty of resisting arrest.

working a paid police detail investigating counterfeit merchandise being sold during a Blink-182 concert at the TD Garden.  Both officers worked in plainclothes, but had their badges, firearms, and radios on their persons.  The officers followed a procedure when approaching anyone during their investigation who might be selling fake merchandise:  they identified themselves as Boston police officers, displayed their badges, and advised that they were seeking to check the authenticity of potential counterfeit items.

At approximately 11 P.M., the officers' attention was drawn toward a male (subsequently identified as the defendant) and a female (subsequently identified as the defendant's friend, Olivia Garcia) at the intersection of Canal Street and Valenti Way.  The defendant had "balled up" T-shirts "in his arm."  Upon approaching the defendant and Garcia, both officers identified themselves as Boston police officers, displayed their badges, and advised that they were investigating counterfeit shirts. The officers identified themselves and displayed their badges multiple times.  Officer Watty-Niles testified that he lifted his shirt and showed the defendant his badge at least three times.  After the officers identified themselves, the defendant pushed and pulled away, and attempted to move away from the officers.  The officers noticed that the defendant was "inebriated" as he had bloodshot eyes, an odor of alcohol

2

emanating from him, slurred speech, and was unsteady on his feet. The officers repeated that they were investigating counterfeit shirts, and the defendant stated that the shirts were not fake, and that he had bought the shirts. As the interaction continued, the defendant said that the officers "were trying to rob him." One of the officers stated, "let us see the shirts, if you did buy them, they're not counterfeit, we'll give them right back to you." The defendant released the shirts and, as Officer Watty-Niles examined them, the defendant stepped behind him and "placed his arms around [the officer's] neck." The defendant held Officer Watty-Niles in a "headlock" or "chokehold" for approximately fifteen to twenty seconds. Officer Morgan instructed the defendant to release the officer, but the defendant failed to do so. Officer Morgan then sprayed the defendant with pepper spray, after which the defendant released Officer Watty-Niles. The officers attempted to place handcuffs on the defendant, but he resisted. By this time, bystanders had gathered nearby and were shouting to "just do what [the officers] say." The officers eventually were able to put the defendant in handcuffs and detain him. After being placed in handcuffs, the defendant acknowledged to Officer Watty-Niles that he had seen his badge and gun. At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty, which the judge denied.

2.  Defendant's case.  The defendant testified at trial and stated the following.  He and Garcia took an Uber to the concert.  While there, he bought four shirts and a hat at the authorized merchandise stand within TD Garden -- the hat and two shirts for him and one shirt for each of his children.  After the show, at around 11 P.M., they exited TD Garden, stopped and asked a uniformed officer for directions to the Uber location as they were not familiar with the area, and headed to the pickup area to meet the Uber they had ordered for their return trip home.

The defendant was wearing the new hat and carrying the four T-shirts that he purchased inside the concert venue draped over his shoulder.  A man in plainclothes, later identified as Officer Watty-Niles, came up next to him and said, "nice shirts, where'd you get them?"  The defendant laughed and said, "I just got them at the show."  The defendant looked back, and seeing the officer had the shirts in his hands, the defendant said, "What are you doing?"  Officer Morgan then grabbed him by the wrist and yelled, "Give me the shirts, give me the shirts, give me the shirts."

The defendant testified that he believed he was being robbed, so he held onto his shirts and tried to get away from the men.  One of the officers came between the defendant and Garcia while the other continued pulling the shirts from the

4

defendant.  The defendant and Garcia both screamed for help.  A bystander called 911, as did Garcia.

The defendant tried to pull away but continued holding onto the shirts while the men kept yelling, "Give me the shirts, give me the effing T-shirts" and threatened him with pepper spray. Officer Watty-Niles and the defendant were both holding the shirts, struggling, when Officer Morgan deployed pepper spray into the defendant's face.

The defendant testified that it all happened in seconds, and he was in shock after being sprayed.  After being sprayed, his eyes were burning and the officers pushed him away.  He stumbled back off the curb and put his arm on the back of Officer Watty-Niles' shoulders to catch himself from falling. He testified that he was then dragged by the officers to a spot across the street and it was then that Officer Morgan reached into his front left pocket and pulled out his badge and handed it to the defendant.  The defendant then realized that the men were police and said, "Why wouldn't you tell me that at the beginning, why are you telling me now?"

The defendant further testified that he never put his arm around Officer Watty-Niles' neck and that he did not know the two men were Boston police officers until after they had handcuffed him.  He testified that when he tried to leave, the police chief who was then on the scene said that because the

5

defendant's arm touched the skin of Officer Watty-Niles, the police were arresting him for assault and battery on an officer.

The defendant renewed his motion for a required finding of not guilty at the close of the evidence and that motion was likewise denied.

Discussion.  The defendant argues that the evidence was insufficient to prove assault and battery on a police officer because the Commonwealth failed to establish that the defendant had knowledge that Officer Watty-Niles was a police officer engaged in the performance of his duties.  See Commonwealth v. Francis, 24 Mass. App. Ct. 576, 581 (1987).  We apply the familiar test to determine "whether, after viewing the evidence in the light most favorable to the [Commonwealth], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "If, from the evidence, conflicting inferences are possible, it is for the jury to determine where the truth lies, for the weight and credibility of the evidence is wholly within their province." Commonwealth v. Lao, 443 Mass. 770, 779 (2005).  See Commonwealth v. Nelson, 370 Mass. 192, 203 (1976) (evidence need not require jury to draw inference; sufficient that evidence permits inference to be drawn).

Here, there was ample and repeated testimony from both officers that they identified themselves as Boston police officers multiple times, displayed their badges to the defendant multiple times, and explained their reason for approaching the defendant and asking him questions. Furthermore, Officer Watty-Niles testified that the defendant admitted to him that he had seen his badge and gun. This evidence was sufficient to demonstrate the requisite knowledge element and warrant the denial of the defendant's motion for a required finding of not guilty. To be sure, there was also evidence supporting the defendant's argument that he did not know that he was being confronted by police officers. This included evidence of the screams for help and the 911 calls. In addition, the defendant testified to a contrary version of events, and contested the officers' testimony in material respects. Under the Latimore standard, however, we must view the evidence in the light most favorable to the Commonwealth, recognizing that the jurors were entitled to disbelieve or disregard the defendant's version of events. See Commonwealth v. Santos, 454 Mass. 770, 777 (2009). To the extent there was conflicting testimony it was for the jury to determine which evidence to believe.[2] See Lao, 443 Mass. at 779.

_____

[2] We are likewise unpersuaded by the defendant's argument that the officers were not engaged in the performance of their

7

The defendant also contends that the judge erred in failing to provide a self-defense instruction at trial. Where the defendant neither raised the issue below nor requested such an instruction, our review is limited to whether there was any error, and if so, whether that error created a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999). Here, we discern no error. The defense in the present case was that the defendant did not know that he had assaulted a police officer and, in such circumstances, it was not manifestly unreasonable not to pursue or argue a separate defense. See, e.g., Commonwealth v. Levia, 385 Mass. 345, 353-354 (1982) (discussing strategy and tactics that are not manifestly unreasonable when made). Moreover, the defendant testified at trial and did not claim that he acted in self-defense. Indeed, he claimed that he never put his arm around the officer and never choked him. The defendant has not shown

---

duties because they were working under the authority of an injunction that may have expired. Viewed in the light most favorable to the Commonwealth, there was evidence that the officers were working a paid detail in their capacity as Boston police officers. See, e.g., Commonwealth v. McCrohan, 34 Mass. App. Ct. 277, 282-283 (1993). See also Commonwealth v. Montes, 49 Mass. App. Ct. 789, 793 (2000) (rejecting argument that "making an unlawful arrest cannot constitute part of an officer's official duties" in context of crime of assault and battery on police officer). We also note that the defendant did not argue at trial that the expired injunction impacted the sufficiency of the evidence. Rather, the defense contended that the status of the injunction "just goes to credibility." See id. at 792, n.4.

8

that it was error not to give a self-defense instruction sua sponte where the defense did not argue self-defense at trial. See Commonwealth v. Norris, 462 Mass. 131, 144 (2012) (instructing on unrequested defense might "interfere[] with the defendants' right to present their chosen defenses").

To the extent that the defendant claims that his trial counsel's failure to request a self-defense instruction constituted ineffective assistance of counsel, we note that the defendant did not raise this claim through the preferred method of a motion for new trial accompanied by affidavits.  He thus presents the claim "in its weakest form[,] . . . bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant viewing the case with hindsight" (quotation and citation omitted).  Commonwealth v. Diaz, 448 Mass. 286, 289 (2007).  "Because the defendant raises [this] claim[] for the first time on direct appeal, [its] factual basis must appear 'indisputably on the trial record' for us to resolve [it]."  Commonwealth v. Vera, 88 Mass. App. Ct. 313, 323 (2015), quoting Commonwealth v. Dargon, 457 Mass. 387, 403 (2010).  This is not such a case.  On the record before us, the claim is speculative and unpersuasive.

Finally, the defendant argues that the stop and seizure by the officers was not based on reasonable suspicion.  Where the defendant did not raise this issue in the trial court, ideally

9

through a pretrial motion to suppress, the argument is waived. See Commonwealth v. Brule, 98 Mass. App. Ct. 89, 92 (2020). While we would typically review an unpreserved claim of error under a substantial risk standard, "because the factual record was undeveloped at trial, any claim of error should have been brought first in a motion for a new trial." Id. Because the defendant did not do so, "the record does not permit such review of this waived issue . . . . Where the Commonwealth was not put on notice of the need to present any evidence on this issue at trial, we must 'decline to reach the merits of the issue raised for the first time on appeal because it depends on the development of facts not in the record before us.'" Id., quoting Commonwealth v. Santos, 95 Mass. App. Ct. 781, 798 (2019).[3]

Judgment affirmed.

By the Court (Rubin, Neyman & Tan, JJ.[4]),

Clerk

Entered: July 30, 2025.

---

[3] To the extent we do not discuss other arguments made by the parties, they have not been overlooked. "We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[4] The panelists are listed in order of seniority.

10