COMMONWEALTH *vs.* FERMIN RAMIREZ.

No. 97-P-0514.

Suffolk. April 8, 1998. - May 19, 1998.

Present: KASS, SMITH, & JACOBS, JJ.

*Self-Defense. Evidence,* Intoxication. *Practice, Criminal,* Argument by prosecutor.

At a murder trial, the judge did not abuse his discretion in refusing to allow defense counsel to question a police officer about the meaning of the defendant's breathalyzer test result, where such testimony was irrelevant to the defendant's claim of self-defense and, even if relevant, was cumulative of other testimony regarding the defendant's intoxication at the time of his arrest. [801-803]

At the trial of indictments, error, if any, in certain remarks in a prosecutor's closing argument were not prejudicial, where the comments were based on evidence introduced at trial and, in light of the jury's verdicts, were unlikely to have influenced the jury inappropriately. [803]

INDICTMENTS found and returned in the Superior Court Department on April 6, 1982.

The cases were tried before *Robert W. Banks,* J.

*Michael Malkovich* for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On April 6, 1982, a Suffolk County grand jury returned indictments charging the defendant with the murder of Eduardo Ortiz Sanchez, and with two counts of assault and battery on Lorenzo Sanchez by means of a dangerous weapon, to wit: a pan (count I) and a bottle (count II).

On August 4, 1982, the defendant failed to appear for a scheduled court date and was defaulted. On August 31, 1994, he was brought back to Suffolk County on a warrant and the default was removed. On October 30, 1995, the defendant was tried by a jury which, on November 7, 1995, found the defendant guilty of manslaughter on the murder indictment, and

guilty on count II of the assault and battery by means of a dangerous weapon. He was found not guilty on count I of that indictment.

On appeal, the defendant raises two issues, namely: (1) the judge committed error by refusing to allow defense counsel to question a police officer about the meaning of a breathalyzer test result; and (2) the prosecutor made an improper closing argument.

The Commonwealth introduced evidence that on February 13, 1982, the defendant and his brother, Arnaldo Ramirez (Arnaldo) visited the apartment of his former wife's aunt. They spent the evening watching a movie on television. Between 1:00 and 2:00 A.M., the wife's nephew, Eduardo Ortiz Sanchez (victim), and Lorenzo Sanchez (Sanchez) arrived at the apartment.

A fight broke out between the defendant and Sanchez, during which the defendant hit Sanchez on the head with a pot. The victim and Arnaldo joined in the fight. The fighting eventually stopped and the aunt asked all of the men to leave her apartment.

As the men began to leave, the fighting broke out again. The defendant took a large glass ketchup bottle from a cabinet and hit Sanchez over the head with it. The defendant then stepped outside the apartment and stood in the hallway holding the neck of the now broken bottle. The victim followed the defendant into the hallway; he was not holding anything in his hands. The defendant struck the victim with the broken bottle and the victim fell to the floor bleeding from the neck. The defendant dropped the bottle and left the apartment building. The police were called but the victim was dead when they arrived. The defendant was arrested but fled the jurisdiction.

When the Federal Bureau of Investigation arrested him some twelve years later, the defendant gave a statement about the 1982 killing. He stated that he had been drinking prior to the incident in question. When the victim and Sanchez arrived, he was sleeping but later awoke to discover the other men in the apartment. The defendant then told Sanchez that he wanted to go home but Sanchez told him that he would hit him if he left. When the defendant tried to leave, Sanchez struck him and they began fighting; the other men then joined in the affray. At one point, the defendant was told that Sanchez was trying to kill Arnaldo and he went to Arnaldo's aid. When he did so, the victim,

who was holding a knife "or something similar," attacked the defendant, who grabbed a bottle, broke it against some stairs, and swung it at the victim's arm. The victim fell to the floor, bleeding from the neck, at which point the defendant left the apartment building.

At trial, the defendant testified that he had consumed some two or three six-packs of beer in the hours before the homicide. He testified that Sanchez had been hostile and belligerent to him since they were teenagers but that he never had any previous trouble with the victim. The defendant also claimed that he had hit the victim with the bottle in self-defense, believing that the victim had a knife or other weapon in his hand, and that a locked door prevented him from fleeing from the victim.

1. *Exclusion of evidence concerning breathalyzer result.* The defendant first was arrested about two hours after the incident in the apartment. He was taken to a hospital to treat a cut on his hand, and then brought to a police station to be booked at approximately 7:00 A.M.

While being booked, a detective requested Sergeant Cummings, a police officer, to administer a breathalyzer test to the defendant. The test was administered at approximately 7:15 A.M., and the result showed that the defendant had a blood alcohol level of .14. At trial, defense counsel attempted to question Cummings regarding the significance of the test result, but the judge excluded the questions on the ground that Cummings was not qualified to give an opinion. The defendant claims reversible error because the degree of his intoxication was important to his self-defense claim.

A defendant cannot lawfully kill in self-defense unless he " 'had *reasonable* ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm' and that he 'used no more force than was *reasonably* necessary in all the circumstances of the case' " (emphasis in original). *Commonwealth* v. *Barros*, 425 Mass. 572, 576 (1997), quoting from *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980). "[A] defendant's belief cannot be deemed reasonable on the ground that, due to his intoxication, he misapprehended the situation." *Commonwealth* v. *Barros*, 425 Mass. at 576. Therefore, "[a] determination as to whether a defendant's belief concerning his exposure to danger is reasonable may not take into account his intoxication." *Ibid.* Accordingly, because the defense was self-defense, the degree of the defendant's intoxication was irrelevant.

Even if the evidence were relevant, its exclusion was not error. The standard of review on appeal is whether the trial judge abused his wide discretion to exclude expert testimony. *Commonwealth* v. *Francis*, 390 Mass. 89, 99 & n.6 (1983), and, if so, whether the exclusion prejudiced the defendant by "weaken-[ing the defense] in some significant way." *Commonwealth* v. *Daggett*, 416 Mass. 347, 352 n.5 (1993), quoting from *Commonwealth* v. *Schulze*, 389 Mass. 735, 741 (1983).

The defendant's purpose in attempting to obtain Cummings's expert opinion was to show that the defendant's blood alcohol level at the time of the homicide exceeded that level which triggers the statutory inference that a driver is too intoxicated legally to operate a motor vehicle. See G. L. c. 90, § 24(1)(*e*) (fact finder may infer from blood alcohol level whether the driver is impaired by alcohol). However, the blood alcohol level that applies to motor vehicle cases has been excluded in cases in which the defendant is not on trial for operating a motor vehicle while under the influence of alcohol. *Commonwealth* v. *Griffin*, 19 Mass. App. Ct. 174, 185-186 (1985). *Commonwealth* v. *Haley*, 23 Mass. App. Ct. 10, 15 n.9 (1986). See *Commonwealth* v. *Cruz*, 413 Mass. 686, 691-692 (1992).

Although the defendant now acknowledges that his blood alcohol level is not relevant here, he claims that Cummings was nevertheless qualified to correlate the blood alcohol level to his observations of the defendant's physical and mental appearance. However, all of the officers who observed the defendant during his arrest and at the booking stage, including Cummings, testified that he was under the influence of alcohol. Therefore, because any of Cummings's testimony concerning the correlation of the blood alcohol level with his observations of the defendant would be cumulative, the judge acted within his discretion in excluding that portion of Cummings's testimony. *Commonwealth* v. *Cokonougher*, 35 Mass. App. Ct. 502, 505 (1993) (judge can exclude witnesses' testimony, including that of expert witnesses, when their testimony is cumulative or repetitive).

Finally, the judge acted within his discretion in ruling that Cummings was not qualified to give an opinion as to whether the defendant's blood alcohol level would have been significantly higher at the time of the homicide than it was at the time the breathalyzer test was given. We think that it was within the common knowledge of jurors that an intoxicated person, once

he stops drinking, becomes less intoxicated over time. Further, the medical examiner testified that a person's blood alcohol level decreases over time.[1]

2. *Claim of improper remarks in prosecutor's summation.* The defendant claims that the prosecutor committed prejudicial error when he argued that justice had been denied to the victim, his family, and the community for thirteen years and that "it does not need to be denied any longer." There was an objection to the comments, and a motion for a mistrial was denied.

There was evidence introduced at trial that the defendant had fled the jurisdiction and, as a result, there had not been a trial until thirteen years after the homicide. In that context the remarks were not prejudicial. Further, the prosecutor did not ask the jury for a guilty verdict or "for a 'proper verdict' (with the understanding that a proper verdict would be a guilty verdict)." *Commonwealth* v. *Moore*, 408 Mass. 117, 129 (1990). Finally, the jury were obviously not completely persuaded by the prosecutor's argument. They rejected the Commonwealth's theory that the defendant had deliberately murdered the victim and instead returned a verdict of manslaughter. See *Commonwealth* v. *Rogers*, 43 Mass. App. Ct. 782, 787-788 (1997) (jury that acquitted defendant of several charges were unlikely to have been swept away by prosecutor's argument). Therefore, even if the remarks were error, they were not prejudicial.

*Judgments affirmed.*

---

[1]We note that the judge refused to allow the medical examiner to respond to a hypothetical question asked by defense counsel that inquired, in view of the defendant's .14 blood alcohol level at the time he was booked, what the defendant's blood alcohol level would have been at the time of the incident. Assuming, without deciding, that the exclusion was error, it was not prejudicial in view of the overwhelming evidence that the defendant was under the influence of alcohol when he was observed shortly after the homicide.