COMMONWEALTH *vs.* DERRICK C. KISER.

No. 98-P-1453.

Worcester. November 17, 1999. - February 25, 2000.

Present: JACOBS, SMITH, & GREENBERG, JJ.

*Search and Seizure,* Warrant, Exigent circumstances, Arrest. *Constitutional Law,* Search and seizure, Arrest. *Arrest.*

No exigency justified police officers' warrantless entry into an apartment to suppress loud music that the defendant-resident had just agreed to turn down; in any event, the loud music did not, in the circumstances, amount to a breach of the peace. [650-652]

There was no merit to the claim that police officers had arrested the defendant for his alleged assault and battery upon a police officer who was entering the defendant's apartment without permission and without a warrant, where the record demonstrated that the defendant was arrested subsequently and only after police had seized contraband from plain view in the defendant's bedroom [652-653]; and, in any event, there was no exigency in connection with the alleged assault and battery to justify the officers' warrantless entry, and an assertion of a reasonable fear for the officers' safety was not supported by the record [653].

INDICTMENTS found and returned in the Superior Court Department on April 18, 1997.

A pretrial motion to suppress evidence was heard by *Francis R. Fecteau,* J.

An application for an interlocutory appeal was allowed by *Roderick L. Ireland,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Harry D. Quick, III,* Assistant District Attorney, for the Commonwealth.

*Barry L. Pretzel* for the defendant.

GREENBERG, J. Before trial on indictments charging trafficking in cocaine, possession of a controlled substance in a school zone, assault and battery on a police officer, and possession of

marijuana, the defendant raised a claim that police had unlawfully entered his apartment and unlawfully seized items kept in his bedroom.

A Superior Court judge held an evidentiary hearing on the defendant's motion to suppress evidence of cocaine, marijuana, and assorted drug-related paraphernalia alleged to belong to the defendant and found "in plain view." Thereafter, the judge allowed the defendant's motion to suppress and issued written findings of fact and rulings of law in support of his decision. The Commonwealth brings this interlocutory appeal pursuant to Mass.R.Crim.P. 15, 378 Mass. 884 (1979), and G. L. c. 278, § 28E. See *Commonwealth* v. *Bouvier*, 399 Mass. 1002, 1003 (1987). We affirm.

1. *The propriety of the warrantless entry.* At the outset we are asked to consider whether justification existed for warrantless entry of the apartment itself. The applicable principles have been much discussed. The decisional law generally forbids police entry into a residence without a warrant. *Payton* v. *New York*, 445 U.S. 573 (1980). *Commonwealth* v. *Forde*, 367 Mass. 798, 806 (1975). *Commonwealth* v. *Derosia*, 402 Mass. 284, 286, cert. denied, 488 U.S. 980 (1988). See *Commonwealth* v. *Huffman*, 385 Mass. 122, 124 (1982); *Commonwealth* v. *Acosta*, 416 Mass. 279, 281-282 (1993) (relying on *Payton* to justify entry to arrest under Fourth Amendment to United States Constitution but not passing on whether art. 14 of Declaration of Rights of Massachusetts Constitution requires more in view of exigent circumstances).

Where the police have entered a residence without a warrant, the government bears the burden of showing that the officers' conduct fell within the narrow, jealously guarded exceptions to the general rule. *Commonwealth* v. *Forde*, 367 Mass. at 800. *Commonwealth* v. *DiGeronimo*, 38 Mass. App. Ct. 714, 721-722 (1995).

One such exception is where police are confronted with an emergency situation which, at the time they commenced their warrantless search, made it impracticable for them to get a warrant. *Commonwealth* v. *Paniaqua*, 413 Mass. 796, 797-799 (1992). *Commonwealth* v. *Lopez*, 38 Mass. App. Ct. 748, 749 (1995). Logically, the question whether exigent circumstances exist depends upon an evaluation of all the circumstances as they appeared to the police at the time. See *Commonwealth* v. *Callazo*, 34 Mass. App. Ct. 79, 83-84 (1992). Compare *Com-

*monwealth* v. *Wigfall*, 32 Mass. App. Ct. 582, 586-588 (1992). In *United States* v. *Cresta*, 825 F.2d 538 (1st Cir. 1987), cert. denied sub nom. *Impemba* v. *United States*, 486 U.S. 1042 (1988), the court explained the assessment which courts should make in determining whether "exigent circumstances" exist which authorize police to make a warrantless entry into a dwelling. The court stated that the test "is whether there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant." *Id.* at 553, quoting from *United States* v. *Adams*, 621 F.2d 41, 44 (1st Cir. 1980). See *Commonwealth* v. *Sergienko*, 399 Mass. 291 (1987); *Commonwealth* v. *Amaral*, 16 Mass. App. Ct. 230, 235 (1983). Thus the standards as to exigency are strict and the burden of showing it is on the government. *Vale* v. *Louisiana*, 399 U.S. 30, 34-35 (1970). *Commonwealth* v. *Hall*, 366 Mass. 790, 801-803 (1975). *Commonwealth* v. *Forde*, 367 Mass. at 800-801.

We now apply these principles to the facts found by the motion judge in the case at hand when he acted on the suppression motion. See *Commonwealth* v. *Moon*, 380 Mass. 751, 755-756 (1980).

Sometime after 3:00 A.M. on October 24, 1996, four police officers returning to their cars from another call were approached by a woman complaining about a noisy party up the street. The officers walked toward the building she had indicated and heard loud music coming from the third floor. They went upstairs and knocked. The defendant answered the door, standing on the threshold "neither in the apartment nor in the hallway." The officers recognized him as a member of a local gang that had a reputation for narcotics and weapons violations. One of the officers asked the defendant to turn the music down, and he responded "yeah, okay." Just then, an unidentified male ran from one side of the room to the other, out of the officer's line of sight. The officer moved forward to get a better view into the room. The defendant pushed the officer back, "although not off his feet or backward any appreciable distance," and tried to close the door. The officers then forcibly pushed the door open and entered, out of a stated concern for their safety. The officers told everyone who did not live there to leave and ordered those remaining to put their hands on a nearby pool table. The defendant did not leave, and the police asked him for his identification. At first he refused, but then he said it was in his room and asked whether he could retrieve it. Two officers ac-

companied him into the room. When they saw contraband on top of his dresser in plain view, they placed the defendant under arrest.

The government claims no warrant was required because the loud music was a breach of the peace, and the police entered under the authority of G. L. c. 41, § 98.[1] The judge rejected that contention and ruled that loud-sounding music was not the sort of riotous behavior that justified entry under the statute. We agree with the judge that if any statute permits a warrantless entry, its application must meet constitutional safeguards. While the Legislature may expand the authority of police to make warrantless arrests for certain misdemeanors, it may do so only if minimum standards set out by the Supreme Court are met. See, e.g., *Sibron* v. *New York*, 392 U.S. 40, 61 (1968); *Commonwealth* v. *Jacobsen*, 419 Mass. 269, 272 n.3 (1995).

Likewise, in *Payton* v. *New York*, 445 U.S. 573 (1980), the police relied upon a statute authorizing them to enter homes without warrants to make felony arrests. The crimes at issue were felonies, i.e., murder and armed robbery. *Id.* at 576, 578. The Supreme Court in that case concluded that statutory authority notwithstanding, "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.* at 590. See *Commonwealth* v. *Midi*, 46 Mass. App. Ct. 591, 594 (1999), quoting from *Commonwealth* v. *Forde*, 367 Mass. at 805 ("The right of police officers to enter into a home, for whatever purpose, represents a serious governmental intrusion into one's privacy. It was just this sort of intrusion that the Fourth Amendment was designed to circumscribe"). If a statutory, warrantless arrest for murder requires exigent circumstances to be constitutional, surely a statutory, warrantless entry to suppress loud music requires the same.

*Commonwealth* v. *DiSanto*, 8 Mass. App. Ct. 694, 700 (1979), cert. denied, 449 U.S. 855 (1980), enunciated several factors to

---

[1]Police officers "shall suppress and prevent all disturbances and disorder. . . . They may examine all persons abroad whom they have reason to suspect of unlawful design, and may demand of them their business abroad and whither they are going; may disperse any assembly of three or more persons, and *may enter any building to suppress a riot or breach of peace therein.* Persons so suspected who do not give a satisfactory account of themselves, persons so assembled and who do not disperse when so ordered, and *persons making, aiding and abetting in a riot or disturbance may be arrested by the police* . . . ." G. L. c. 41, § 98. (Emphasis added.)

consider in determining exigency and the reasonableness of the intrusion: "(1) the crime in question was one of violence and the suspect had been reported to be armed and dangerous; (2) probable cause to believe that the suspect has committed a felony and strong reason to believe the suspect is in the particular dwelling; (3) the entry has been made peaceably (preferably in the daytime); (4) a likelihood that the delay attendant upon securing a warrant would facilitate the destruction of evidence or property; (5) a likelihood that the suspect would escape if not promptly apprehended; and (6) some showing of a reasonable basis for believing that delay would subject the officers or others to physical harm." These criteria clearly do not support any sort of exigency which would justify bursting into the defendant's apartment to suppress the loud music he had just agreed to turn down. Whatever intimidating — and hence compelling circumstances — the police may have to dispense with the warrant requirement to enter a dwelling, the judge could find, as he did, that this was not the case here. The judge found that the loud music did not amount to a breach of the peace as contemplated by the statute. As the Supreme Court put it, "it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor." *Welsh* v. *Wisconsin,* 466 U.S. 740, 753 (1984). Playing music — even so loudly that it disturbs the neighbors — is an extremely minor offense.

It is true that two earlier Massachusetts cases decided in the late nineteenth century upheld an officer's right to enter a home without a warrant to quell a breach of the peace, but the noise that precipitated the officers' entries in those cases was that of violent fighting, with the attendant fear that someone inside was in physical danger. See *Commonwealth* v. *Tobin,* 108 Mass. 426, 426-427 (1871); *Ford* v. *Breen,* 173 Mass. 52, 52-53 (1899). The exigency there is clear, and police intrusion in such circumstances is reasonable. See *Commonwealth* v. *Forde,* 367 Mass. at 804 (stating that brandishing a gun and threatening to kill everyone in the building is "a classic example of the type of emergency which always excuses the failure to obtain a warrant"); *Commonwealth* v. *DiGeronimo,* 38 Mass. App. Ct. at 722-723. Nothing of the sort happened in the instant case. When the police asked the defendant to turn down the stereo, he replied, "yeah, okay." This situation does not involve the degree

of exigency needed to bypass the Fourth Amendment's warrant requirement.[2]

2. *Arrest for assault and battery as justification for the entry.* The government also claims that the defendant's assault and battery on a police officer[3] justified the officers' failure to obtain an arrest warrant before going inside the apartment. This claim fails for two reasons. First, police officers in the Commonwealth may arrest without a warrant for a misdemeanor if the misdemeanor (1) involves a breach of the peace; (2) is committed in their presence; and (3) is continuing at the time of the arrest, "so that the offence and the arrest form parts of one transaction." *Commonwealth* v. *Jacobsen,* 419 Mass. at 272, quoting from *Commonwealth* v. *Howe,* 405 Mass. 332, 334 (1989). Here, the assault and battery occurred when the defendant pushed the officer back. The defendant tried to close the door to his apartment, but the officers forced their way in. They did not arrest him at that point, but instead dispersed the party. As indicated earlier, when all of the guests left, they still did not arrest the defendant, but instead asked him for identification. They followed him into another room while he got it. There they saw contraband, and only then did they arrest him. The assault and battery was completed long before the arrest took place, and it is clear the two events did not form parts of one transaction. Contrast *Commonwealth* v. *Howe, supra* (warrantless arrest permissible where defendant's driving under the influence of alcohol in officers' presence continued until they

---

[2]On closer facts, *Commonwealth* v. *Mullins,* 31 Mass. App. Ct. 954 (1991), involved an entry and arrest for breach of the peace by reason of loud music. The motion judge was correct to distinguish *Mullins,* however. The issue there was an ineffective assistance of counsel claim for failure to argue the illegality of the police entry. The court determined that the defendant was not deprived of a substantial ground of defense where there was evidence at trial that the officers had permission to enter, and that even if the arrest had been ruled illegal and its fruits suppressed, the defendant likely would have been convicted of breaching the peace with the untainted evidence. *Id.* at 954-955. While the court there also referred to G. L. c. 41, § 98, it is clear the case was not decided on that ground. See *Old Colony Trust Co.* v. *Commissioner of Corps. & Taxn.,* 346 Mass. 667, 676 (1964).

[3]We assume without deciding that the defendant's action was unjustified, and therefore an assault and battery. If the officer was attempting to enter the defendant's apartment illegally, however, the defendant was entitled to use reasonable force to protect himself and his property from the intrusion. See *Commonwealth* v. *Wright,* 158 Mass. 149, 158-159 (1893).

stopped the vehicle, and the only intervening event between the stop and his arrest was administration of a sobriety test).

Second, as discussed with regard to the breach of the peace claim, it is per se unreasonable for officers to cross a threshold to effect a warrantless arrest absent exigency. Other than the defendant's presence in the apartment, none of the factors discussed in *Commonwealth* v. *DiSanto*, 8 Mass. App. Ct. at 700, concerning exigency and the compelling need to go inside, were present.

After the police asked the occupants of the apartment to turn down the music, there was no reason to arrest them. Contrast *Commonwealth* v. *Mullins*, 31 Mass. App. Ct. 954 (1991) (police responding to neighbors' second call found defendant at window shouting obscenities). While it is true that the police knew of the defendant's membership in a gang, this cannot justify the intrusion. See *Commonwealth* v. *Amaral*, 13 Mass. App. Ct. 238, 241 (1982); *Commonwealth* v. *Avery*, 44 Mass. App. Ct. 781, 783 (1998).

There was ample time to obtain a warrant to arrest the defendant for assault and battery. It is a stretch to characterize the defendant's conduct as violent. Even the officer who was pushed testified that the defendant was trying to keep him from looking into the apartment, not that the defendant was attacking him. His perception is bolstered by the fact that the defendant immediately attempted to close his door. Nothing in the record before the motion judge indicates the defendant was armed or otherwise dangerous. As the motion judge found, "the police knew who the defendant was and easily could have posted watch on the apartment's entrances until a warrant could be obtained, or the police could have simply applied for a criminal complaint. Additionally, the police had no concerns regarding the dissipation of evanescent evidence." See *Commonwealth* v. *Hamilton*, 24 Mass. App. Ct. 290, 294 (1987).

*Order allowing motion to suppress affirmed.*