## COMMONWEALTH *vs.* JOHN P. GOMES
(and ten companion cases[1]).

No. 02-P-441.

Suffolk. May 15, 2003. - September 19, 2003.

Present: GRASSO, McHUGH, & MILLS, JJ.

*Constitutional Law,* Assistance of counsel, Search and seizure. *Practice, Criminal,* Assistance of counsel, Instructions to jury. *Search and Seizure,* Expectation of privacy. *Arrest. Police,* Unlawful arrest. *Privacy. Evidence,* Spontaneous utterance.

This court concluded that absent the use of excessive or unnecessary force by police upon his person, an individual may not forcibly resist even an unlawful entry into his residence by one who he knows or has good reason to believe is a police officer engaged in the performance of his duties [333]; consequently, at the criminal trial of multiple defendants on charges of assault and battery on police officers arising from the officers' allegedly unlawful entry into certain premises, trial counsel was not ineffective for failing to request a jury instruction on the right to use force to prevent unlawful police entry into the home [339-343]. McHUGH, J., concurring.

At the criminal trial of multiple defendants on charges of assault and battery on police officers, counsel was not ineffective for failing to file a motion to suppress evidence obtained after police allegedly unlawfully entered certain premises, where not every codefendant had a reasonable expectation of privacy in the premises, and where the exclusionary rule did not reach evidence of a defendant's unlawful conduct in response to police violations of constitutional protections against unlawful search and seizure. [336-338]

In a criminal case, a District Court judge properly denied a motion to dismiss charges stemming from the defendants' forcible resistance to unlawful police entry into certain premises, where the police conduct, although unlawful, was neither egregious nor conscience-shocking, and where the remedy for all but the most egregious violations of the Fourth Amendment to the United States Constitution or art. 14 of the Massachusetts Declaration of Rights is suppression of the evidence and its fruits, not dismissal of the resulting charges. [338-339]

A District Court judge did not err in a criminal case when he declined to instruct the jury on the Fourth Amendment requirements for police to enter into a dwelling and to demand that an occupant produce identification, where the proposed instruction was irrelevant to the case. [343-344] McHUGH, J., concurring.

[1]Four against Arnaldo L. Fernandes, two against Aguinaldo L. Fernandes, three against David Taylor, and one against John P. Gomes.

This court concluded that no substantial risk of a miscarriage of justice resulted from the exclusion of excited utterance testimony in a criminal trial, where there was no dispute about the truth of those statements and where abundant testimony put the relevant question in issue. [344]

COMPLAINTS received and sworn to in the Dorchester Division of the District Court Department on January 2, 1998.

The cases were tried before *Thomas J. May*, J.

*Charles Allan Hope* (*John H. Cunha, Jr.*, with him) for John P. Gomes & others.

*Rami M. Vanegas*, Assistant District Attorney, for the Commonwealth.

GRASSO, J. May an individual forcibly resist a warrantless police entry into his residence that is later determined to be unlawful, or is the right forcibly to resist police limited by the rule of *Commonwealth* v. *Moreira*, 388 Mass. 596, 601 (1983), to resistance against excessive or unnecessary force upon his person? We hold that absent the use of excessive or unnecessary force by police upon his person, an individual may not forcibly resist even an unlawful entry into his residence by one who he knows or has good reason to believe is a police officer engaged in the performance of his duties.[2]

1. *Background.* A melee erupted in the course of a police investigation into a possible breaking and entering into a residence at 8 Corwin Street in the Dorchester section of Boston. Although it was never determined whether a breaking and entering had occurred, or who might have been involved, seven individuals were charged with assault and battery upon the investigating officers.[3] We consider appeals by four of those individuals found guilty after jury trial: John Gomes (Gomes);

[2]Our holding addresses forcible resistance to police, not passive resistance to entry. With due respect to the concurrence, our holding is neither broad nor sweeping and does not implicate nonforcible resistance such as locking an entry door prior to police entry or standing passively in the doorway, if indeed, that is what is meant by a "forceful but nonassaultive effort" to prevent police entry.

[3]The charges against Arnaldo Fernandes included resisting arrest and being a disorderly person. The Commonwealth also brought charges against Manuel Lopes, Manuel Nova, and David Torres. At trial, the judge allowed motions

Arnaldo Fernandes (Arnaldo)[4]; Aguinaldo Fernandes (Aguinaldo); and David Taylor (Taylor).

On appeal, the codefendants contend that trial counsel were ineffective in failing to (1) move to suppress everything that followed an allegedly unlawful entry into a residence at 6 Corwin Street, and (2) request that the jury be instructed on an asserted right to use force to resist unlawful entry into the residence. Closely related appellate contentions are that the trial judge erred in (1) denying motions to dismiss[5]; and (2) refusing to instruct the jury on the Fourth Amendment requirements for police to enter the home or demand that an occupant produce identification. Finally, the defendants assert that the judge's exclusion of various excited utterances created a substantial risk of a miscarriage of justice. We affirm.

2. *The entry and the ensuing melee.* The contextual facts relevant to the issues on appeal are these. Early on New Year's morning, 1998, Tiffany Talbert awakened to a loud banging on the side of her home at 8 Corwin Street. Talbert, who lived on the third floor of a three-family dwelling, peered out a kitchen window that overlooked the door to the cellar. She noticed a board leaning against the house. Talbert was alarmed because one month earlier someone had broken into her home via the cellar windows. Subsequent to that break, Talbert's landlord had boarded up the cellar windows.

Talbert called the police. Boston police Officers Kevin Coyne and Joseph Tse arrived within minutes and entered the building through the cellar door that was normally kept locked. They proceeded to the third floor where they spoke with Talbert and then accompanied her to the cellar. There, in addition to the unlocked door, the officers discovered that one of the cellar

---

for required findings of not guilty as to all charges against Torres and Lopes. The jury found Nova not guilty on all counts and acquitted the four codefendants of some of the other charges stemming from the brawl.

[4]The trial judge allowed a motion for required finding of not guilty upon a complaint against Arnaldo alleging assault and battery by means of a dangerous weapon (a door) because there was no evidence that Arnaldo struck a police officer with the door.

[5]At the close of the evidence, Taylor moved orally to dismiss the charges against him; the other defendants joined in the motion. The judge initially treated the motion as one for required findings of not guilty, but ultimately treated it as a motion to dismiss and denied it.

windows appeared to have been forced open from the outside. The officers secured the window and prepared to leave.

At Talbert's request, the officers searched the perimeter and the yard at the rear of Talbert's house. While at the side of the house opposite the basement door, they heard hushed voices and saw a shadowy motion followed by the sound of a door closing. The lighting was limited. The officers walked in the direction of the voices and came to the door to 6 Corwin Street.

Officer Coyne, who was in uniform, knocked on the door and identified himself as a police officer. Eventually, Arnaldo opened the door about a foot. From this vantage the police only could see the width of Arnaldo's face. He appeared intoxicated, with glassy eyes and an odor of alcohol on his breath. Coyne asked Arnaldo to open the door further, but Arnaldo refused to comply. Likewise, he refused to give his name or produce identification. Coyne placed one hand on the door and his foot in the door, forcibly keeping the door open.

Officer Coyne again asked Arnaldo for identification. Arnaldo told the police to go to the front of the house, ring the second floor doorbell, and talk to his mother. Officer Tse proceeded in that direction, while Coyne remained at the door with Arnaldo.

Arnaldo asked Officer Coyne to remove his foot from the entrance and then attempted to push the door closed. Coyne prevented Arnaldo from closing the door, using his foot and applying pressure with his hands, and directing that Arnaldo stop. During a struggle that ensued as Arnaldo sought to close the door, Arnaldo shoved Coyne in the chest. Coyne grabbed Arnaldo by his shirt and attempted to place him under arrest. Arnaldo resisted and Coyne yelled for Officer Tse to assist him.[6]

The struggle to arrest Arnaldo and forcibly remove him from the house spilled out into the backyard where the officers attempted to handcuff Arnaldo. At some point, a group that included Aguinaldo, Gomes, and Taylor came running from

---

[6]Not material to our decision is the divergence in Arnaldo's trial testimony that he opened the door and granted permission to police to search the yard; that he told police he lived there; and that Coyne grabbed him as he reached for his wallet while standing in the hall. "A defendant is entitled to have the jury at his trial instructed on the law relating to self-defense if the evidence, viewed in its light most favorable to him, is sufficient to raise the issue." *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980).

inside the house and joined the fracas. One of the assailants picked up a two by four piece of wood. Officer Tse responded with pepper spray aimed in the direction of Taylor, Gomes, and Arnaldo. The spray hung in the air, exposing everyone in the area, including the police, to its effects. With the arrival of backup, the police brought an end to the melee.

3. *The failure of counsel to file a motion to suppress evidence.* The codefendants contend that trial counsel were ineffective in failing to file a motion to suppress. They maintain that Officer Coyne's placing his foot in the door and forcibly preventing Arnaldo from closing it constituted an unlawful entry that required suppression of everything that transpired thereafter as the "fruit of the poisonous tree." Had the police allowed Arnaldo to close the door as he had a right to do, the argument goes, no evidence would have been gathered, and the subsequent crimes would not have been committed. See *Wong Sun* v. *United States*, 371 U.S. 471, 484-488 (1963); *Commonwealth* v. *Lahti*, 398 Mass. 829, 834 (1986), cert. denied, 481 U.S. 1017 (1987).

We discuss a preliminary difficulty with this contention. Not every defendant could establish the requisite expectation of privacy in 6 Corwin Street to challenge the lawfulness of the entry under the Fourth Amendment to the United States Constitution or art. 14 of the Massachusetts Declaration of Rights. See *Minnesota* v. *Carter*, 525 U.S. 83, 90-91 (1998); *Commonwealth* v. *Carter*, 424 Mass. 409, 411 (1997) (defendant has the burden of establishing that search occurred). Neither Taylor nor Gomes resided at 6 Corwin Street or were overnight guests with a cognizable expectation of privacy in the premises. See *Minnesota* v. *Olson*, 495 U.S. 91, 98-99 (1990); *Commonwealth* v. *Morrison*, 429 Mass. 511, 513 (1999). Nor were the four codefendants charged with possessory offenses stemming from a search or seizure of premises in which at least one had an expectation of privacy. See *Commonwealth* v. *Frazier*, 410 Mass. 235, 243 (1991); *Commonwealth* v. *Carter*, 424 Mass. at 411 (discussing very limited exception to general requirement that *each* defendant have an expectation of privacy in the place searched).

Beyond the absence of a cognizable expectation of privacy in

Taylor and Gomes,[7] another fundamental problem exists with the defendants' contention. Counsel were not ineffective in failing to request what the law would not countenance. See *Commonwealth* v. *Reid*, 400 Mass. 534 (1987). Even if considered an unlawful entry, Officer Coyne's use of force to prevent Arnaldo from closing the door did not result in the seizure of contraband or other evidence of criminal activity, see *Commonwealth* v. *Pietrass*, 392 Mass. 892, 900-901 (1984), or lead to police observations of contraband or of other criminal activity inside the dwelling. See *Commonwealth* v. *Ramos*, 430 Mass. 545, 550-551 (2000). Compare *Commonwealth* v. *Marquez*, 434 Mass. 370, 376-377 (2001).

Neither Fourth Amendment nor art. 14 exclusionary rules extend to suppression of evidence of crimes that are in reaction to an illegal search or seizure. See *Commonwealth* v. *Saia*, 372 Mass. 53, 58 (1977) (evidence sought to be suppressed not an "exploitation" of the primary illegality); *Commonwealth* v. *Mock*, 54 Mass. App. Ct. 276, 284-285 (2002). "There is no simplistic 'but for' analysis that applies in this area of the law." *Commonwealth* v. *Saia*, *supra*. Here, as in *Saia*, we deal with "an attempt to suppress evidence which is a result of allegedly wilful acts of misconduct by (the defendants), whose provocation and perhaps ultimate defense may be found in the fact of the entry itself. The exclusionary rule does not reach this far." *Ibid*.

In so holding, we follow numerous other jurisdictions that prohibit a defendant from invoking the exclusionary rule to suppress evidence of his own unlawful conduct in response to police actions in violation of constitutional protections against unlawful search and seizure. See, e.g., *State* v. *Miller*, 282 N.C. 633, 641 (1973) ("[A]pplication of the exclusionary rule in [the] fashion [sought by the defendants] would in effect give the victims of illegal searches a license to assault and murder the officers involved"); *People* v. *Abrams*, 48 Ill. 2d 446, 455-456

---

[7]From Arnaldo's trial testimony that he resided at 6 Corwin Street, we infer that he could easily have provided the necessary affidavit in support of a motion to suppress to establish his expectation of privacy in the premises. See Mass.R.Crim.P. 13, 378 Mass. 871 (1979); Mass.R.Crim.P. 15, as appearing in 422 Mass. 1501 (1996). From the trial testimony we infer that Aguinaldo, who did not testify, could have done the same.

(1971) (such a policy in fundamental opposition to civilized rule of law); Akron *vs.* Recklaw, Ohio Ct. App. No. 14671 (Jan. 30, 1991) (criminal acts, including assault and resisting arrest, not excused because of earlier police transgressions).

4. *The denial of the motion to dismiss.* The defendants also contend that the trial judge erred in denying their motion to dismiss. The judge did not err because this is not the very rare case in which egregious police misconduct might warrant dismissal. See *Commonwealth* v. *Montes*, 49 Mass. App. Ct. 789, 793 (2000). See also *Commonwealth* v. *Shuman*, 391 Mass. 345, 353-355 (1984).

The police clearly possessed a basis for inquiring at 6 Corwin Street, if one were constitutionally required at all. Neither the Federal nor the Massachusetts Constitutions prohibit police from knocking on a citizen's door and making an initial inquiry that seeks voluntary cooperation from a respondent. See *Commonwealth* v. *Fortune*, 57 Mass. App. Ct. 923, 924 (2003) ("when a person is free to leave [or close the door], the police need no justification to conduct an interrogation"). A mere request for identification, without more, does not require constitutional justification.

Moreover, the initial actions of the police were measured and appropriate to a rapidly unfolding situation in the immediate aftermath of a reported burglary at 8 Corwin Street. The investigation disclosed an apparent unlawful entry, hushed voices outside, and a shadowy motion followed by a door closing. These facts and circumstances amounted to at least a reasonable suspicion that a crime had occurred and that the individuals involved might have fled to a nearby location. Good police work, if not just common sense, dictated further inquiry.

As here, however, mere inquiry can quickly devolve to a circumstance requiring greater constitutional justification to prolong the inquiry or take more intrusive steps. See *Commonwealth* v. *Barros*, 435 Mass. 171, 174-175 (2001) (officer's second request to defendant had a compulsory dimension that first did not and transformed consensual encounter into a seizure). Officer Coyne's repeated demand that Arnaldo provide identification and his refusal to allow Arnaldo to close the door exceeded what was constitutionally permissible. The police

lacked a search warrant. Even if there was probable cause to believe that an unauthorized break had occurred at 8 Corwin Street, there was neither probable cause to believe that any perpetrator had fled to 6 Corwin Street nor an exigency justifying warrantless entry therein.[8]

However, the police did not burst through a closed door unannounced in the dead of night. Although unlawful, Officer Coyne's actions were neither conscience-shocking nor egregious. See *Commonwealth* v. *Montes*, 49 Mass. App. Ct. at 793. Nor did they warrant dismissal of criminal charges resulting from the subsequent physical resistance to police by Arnaldo and the other codefendants. *Id.* at 793-794. The remedy for all but the most egregious Fourth Amendment or art. 14 violations is suppression of the evidence and its fruits, not dismissal of the resulting charges. See *United States* v. *Crews*, 445 U.S. 463, 470-471 (1980); *Commonwealth* v. *Hill*, 49 Mass. App. Ct. 58, 61 (2000).

We leave to another day the determination whether the circumstances under which an entry occurs might be so provocative and outrageous as to preclude imposition of a criminal penalty for resistance. See *United States* v. *Russell*, 411 U.S. 423, 431-432 (1973). See also *Roberts* v. *State*, 711 P.2d 1131, 1135 (Wyo. 1985) ("[t]here may be situations in which police activity is so provocative and resistance so understandable that it can only be concluded that the police were not engaged in the lawful performance of their official duties"). This is not such a case.

*5. Counsel's failure to request a jury instruction on the right forcibly to prevent entry.* The defendants next argue that counsel were ineffective in failing to request a jury instruction on the right to use force to prevent unlawful police entry into the

---

[8]Nor did the facts known to police as they met Arnaldo at the door create a reasonable apprehension of danger to the police or others from Arnaldo or others inside. See *Commonwealth* v. *Morrison*, 429 Mass. at 514-515, quoting from *Commonwealth* v. *Hurd*, 29 Mass. App. Ct. 929, 930 (1990) ("the need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency"); *Commonwealth* v. *Ortiz*, 435 Mass. 569, 572-573 (2002) (warrantless entry of store). Compare *Commonwealth* v. *Allen*, 54 Mass. App. Ct. 719, 720-721 (2002).

home. At trial, Arnaldo's defense centered on the unlawfulness of the police entry, the reasonableness of his actions in attempting to close the door, and the excessive force used upon him (including the police striking him in the head with a flashlight and macing him) that would entitle him to use force in self-defense.[9] If Arnaldo were entitled forcibly to resist the entry, then, looking at the evidence in the light most favorable to him, the jury should have been allowed to consider, under proper instruction, whether the force he employed to close the door against Officer Coyne's foot and pressuring hands was a reasonable response to the unwarranted intrusion. Moreover, if Arnaldo were entitled to use force to repel the unlawful police entry, then he need not have waited until the police used excessive or unnecessary force upon his person in order to defend himself from the police use of force upon him as he sought to bar entry. See *Commonwealth* v. *Moreira*, 388 Mass. at 598-599. The two questions were inextricably intertwined. Thus, the evidence squarely put in issue Arnaldo's entitlement to repel forcibly the unlawful entry.[10] If Arnaldo were entitled to such an instruction, then counsel's failure to request the instruction was manifestly unreasonable as it deprived him of an available substantial ground of defense to the charges. In sum, the question of Arnaldo's ability to resist forcibly the police entry was integral to the defense and the trial's outcome.

We conclude that counsel were not ineffective because under

---

[9]From the Commonwealth's and defense's cases in combination, the evidence and fair inferences were that Officer Coyne kept his foot inside the door and pressed against the door with his hands as Arnaldo sought to close it; that Coyne reached in, grabbed Arnaldo by the shirt, and threw him against the wall; and that Arnaldo resisted by shoving and kicking. The struggle spilled out into the yard, where Arnaldo contended the police hit him with a flashlight, threw him against the side of the house, and maced him. See *Commonwealth* v. *Galvin*, 56 Mass. App. Ct. 698, 699 (2002) ("The evidence bearing upon self-defense may be contained in the Commonwealth's case, the defendant's case, or the two in combination").

[10]We may not avoid deciding whether Arnaldo was entitled to resist forcibly the unlawful police entry by parsing the events at issue into those relating to the complaint for assault and battery by means of a dangerous weapon, a door, and those that comprised the other blows to Officer Coyne and Officer Tse as part of Arnaldo's continuing resistance to entry and arrest. The jury were not asked to differentiate in their verdicts between those blows and kicks allegedly delivered by Arnaldo inside the dwelling and those in the yard.

the circumstances, there was no right in Arnaldo (or any of the defendants) to use force to resist even an unlawful entry by the police.[11] Rather, the right to resist forcibly is limited to those instances where the police use excessive or unnecessary force upon the person. See *Commonwealth* v. *Montes*, 49 Mass. App. Ct. at 795-796; *Commonwealth* v. *Peterson*, 53 Mass. App. Ct. 388, 390-391 (2001).

An unlawful entry into a dwelling by police is no small thing. "The right of police officers to enter into a home, for whatever purpose, represents a serious governmental intrusion into one's privacy." *Commonwealth* v. *Forde*, 367 Mass. 798, 805 (1975). Against such violations arose James Otis's defense of privacy that became enshrined in art. 14 of the Massachusetts Declaration of Rights and later in the Fourth Amendment to the United States Constitution. See *Harris* v. *United States*, 331 U.S. 145, 157-158 (1947) (Frankfurter, J., dissenting). See also *Commonwealth* v. *Cundriff*, 382 Mass. 137, 143-145 & nn. 10-11 (1980), cert. denied, 451 U.S. 973 (1981). The security of one's privacy against arbitrary intrusion by the police is one of the core rights basic to a free society. See *Wolf* v. *Colorado*, 338 U.S. 25, 28 (1949). Notwithstanding the high value accorded the right to personal privacy, the modern view is to abolish or sharply curtail the use of force to resist police action.[12]

The Supreme Judicial Court adopted this position in *Commonwealth* v. *Moreira*, 388 Mass. at 598-599, and rejected, prospectively, the common-law rule of *Commonwealth* v. *Crotty*, 10 Allen 403, 405 (1865), that a person has the right to resist forcibly an unlawful arrest. Recognizing the trend toward judicial resolution of disputes and the expanding legal protections and rights available to those interacting with police, the

---

[11]Because the right to use force against police does not arise in order to protect property against unlawful entry, but only to protect the person against excessive or unnecessary force by police, it is not circumscribed by expectation of privacy considerations. Here, however, as Arnaldo alone sought to bar police entry, only he was in a position to seek such an instruction.

[12]Similar concerns against violent resistance to police entry inform the common-law "knock and announce" rule. See *Commonwealth* v. *Cundriff*, 382 Mass. at 146; *Commonwealth* v. *Sepulveda*, 406 Mass. 180, 182 (1989) (rule grounded in desirability of decreasing potential for violence initiated by residents in response to sudden, unexpected invasion of premises, provoking further retaliatory violence by police).

court determined self-help to be "anachronistic" and "antisocial in an urbanized society." *Commonwealth* v. *Moreira*, 388 Mass. at 600, quoting from *State* v. *Koonce*, 89 N.J. Super. 169, 184 (1965). Consequently, the court decided that an arrestee may reasonably be required to submit to a possibly unlawful arrest and to take recourse in the legal processes available to restore his liberty. *Commonwealth* v. *Moreira, supra.*

The *Moreira* rationale is equally compelling in the context of resistance to possibly unlawful entry by police in the performance of their duties.[13] As with the lawfulness of an arrest, the lawfulness of police entry into a residence often presents close and peculiarly fact-dependent questions as to which lawyers and even judges may disagree. *Id.* See *Commonwealth* v. *Forde*, 367 Mass. at 805 (distinction between entry to search and entry to arrest is slight); *Commonwealth* v. *Pietrass*, 392 Mass. at 897 n.8 (for purposes of Fourth Amendment, no difference whether search of home is for a person or a thing). Such questions, which are only resolved later with the benefit of dispassionate reflection, are particularly ill-suited to the split-second judgments required of police in their interactions with the citizenry. "Such a close question is more properly decided by a detached magistrate rather than by the participants in what may well be a highly volatile imbroglio." *Commonwealth* v. *Moreira*, 388 Mass. at 600. If a police officer makes an entry into a dwelling, with or without a warrant, that is ultimately determined to be unlawful, the remedy is to be found in the courts. *Ibid.*

In requiring a person to submit peacefully to police and pursue his remedies through the orderly judicial process, we are not unmindful that the available remedies, such as the suppression of evidence, or civil actions against the offending officers for trespass or violation of civil rights, see 42 U.S.C. § 1983 (2000), might sometimes be deemed inadequate. However, the rule the defendants would have us espouse, that an individual

---

[13]We expressly reject dictum in *Commonwealth* v. *Kiser*, 48 Mass. App. Ct. 647, 652 n.3 (2000), to the effect that an individual is entitled to use reasonable force to protect himself and his property from an unlawful intrusion by police. The court in *Kiser* relied upon dictum in *Commonwealth* v. *Wright*, 158 Mass. 149, 158-159 (1893), that expressed a view, rejected in *Moreira*, that a defendant may use reasonable force to resist police who lack the right to make a warrantless arrest.

may forcibly resist an entry by police that is later determined to be unlawful, would encourage violence and erode the very security that our Federal and State Constitutions are designed to protect. Indeed, resistance would frequently result in far graver consequences for both the officer and the occupant than the unlawful intrusion itself. As Judge Learned Hand put it: "The idea that you may resist peaceful arrest . . . because you are in debate about whether it is lawful or not, instead of going to the authorities which can determine, . . . [is] not a blow for liberty but, on the contrary, a blow for attempted anarchy." 35 A.L.I. Proc. 254 (1958).

Accordingly, we agree with those jurisdictions that limit the right to resist police forcibly to situations where force is used against the person rather than against property or to effect entry. See *United States* v. *Ferrone*, 438 F.2d 381, 390 (3d Cir.), cert. denied, 402 U.S. 1008 (1971) (no right forcibly to resist execution of search warrant even if unlawful). See also *State* v. *Hatton*, 116 Ariz. 142, 147-148 (1977); *State* v. *Wiegmann*, 350 Md. 585, 602-604 (1998) (citing cases in fourteen States and statutes in twenty-seven other States abolishing the common-law right to resist). Compare *United States* v. *Prescott*, 581 F.2d 1343, 1351 (9th Cir. 1978) (passive refusal to consent to warrantless police entry is privileged conduct). But see *Casselman* v. *State*, 472 N.E. 2d 1310, 1316-1317 (Ind. Ct. App. 1985) (upholding individual's right to resist unlawful police entry into home).

6. *The judge's denial of request for instruction on Fourth Amendment requirements.* The trial judge did not err in refusing to instruct the jury on the Fourth Amendment requirements for police to enter into a dwelling and to demand that an occupant produce identification. Such an instruction was irrelevant to the cases against Taylor, Gomes, and Aguinaldo, whose sole interactions with police occurred in the yard. See *Commonwealth* v. *Montes*, 49 Mass. App. Ct. at 794 n.6. Even as to Arnaldo, the proposed instruction was irrelevant to the determination of the only proper question for the jury's consideration: whether the police used excessive force against his person such that he

might be entitled to use force against the police in self-defense.[14] There was no question that Officers Coyne and Tse were police officers engaged in the performance of their duties. Nor was this a case addressing whether the police were liable civilly for trespass or violation of rights under 42 U.S.C. § 1983.

7. *The excited utterances.* Aguinaldo and Taylor also assert that the trial judge improperly precluded Ardilla Fernandes, Aguinalda Fernandes, and Nancy Ruggerio from repeating what Aguinaldo and Taylor told them about having been sprayed with mace. They maintain that such statements were admissible as excited utterances. See *Commonwealth* v. *Carrasquillo*, 54 Mass. App. Ct. 363, 368 (2002). Because the defendants lodged no objection to the judge's ruling, we review for whether there was a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999).

There was no dispute that the police used mace to subdue the combatants. Numerous witnesses, both police and civilian, testified that Officer Tse used pepper spray which hung in the air and affected both the civilians and police in the area. Aguinalda and Ardilla Fernandes, Suzanne and Nancy Ruggiero, Arnaldo, Gomes, and Taylor also testified to the spray's effects upon them individually, including numb lips and burning eyes. There was abundant testimony that squarely put in issue whether each defendant's conduct was a reasonable response to excessive or unnecessary force by police. Accordingly, the exclusion of further excited utterance testimony, even if error, did not give rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Alston*, 360 Mass. 860 (1971); *Commonwealth* v. *Cokonougher*, 35 Mass. App. Ct. 502, 505 (1993) (judge can exclude witnesses' testimony, when their testimony is cumulative or repetitive); *Commonwealth* v. *Ramirez*, 44 Mass. App. Ct. 799, 802 (1998).

*Judgments affirmed.*

McHugh, J. (concurring). I agree that the convictions should

---

[14]The defendants make no challenge to the judge's correct instruction on self-defense that the defendants had the right to use force if the force being used to arrest was unnecessary or excessive.

be affirmed. I also agree with the majority's reasoning in the cases involving Gomes, Taylor, and Aguinaldo Fernandes. In the case involving Arnaldo Fernandes (Arnaldo), however, I do not believe that affirmance of the conviction requires the discussion set forth in part 5 of the majority's opinion, nor do I believe that affirmance requires us to reach out for the majority's broad and sweeping declaration, *ante* at 333, that "an individual may not forcibly resist even an unlawful entry into his residence by one who he knows or has good reason to believe is a police officer engaged in the performance of his duties."

As the majority observes, Arnaldo argues here that he received ineffective assistance of counsel because his attorney failed to request an instruction to the effect that "an official's attempt to enter a home illegally entitles the defendant to use reasonable force to resist the entry." He argues that

> "[t]he jury should have been so [instructed] in order to properly assess whether the officers used excessive force in attempting to arrest [Arnaldo], his brother, and their guests, and in determining whether [Arnaldo's] attempt to close the door, per the officers' testimony, constituted an assault and battery."

Neither rationale, however, entitled Arnaldo to the instruction he claims his attorney failed to seek. Insofar as forceful resistance of an arrest is concerned, *Commonwealth* v. *Moreira*, 388 Mass. 596 (1983), squarely held that individuals are not entitled to use force to resist even an unlawful arrest. Insofar as the door closing was concerned, Arnaldo was convicted of assaulting two officers, Coyne and Tse, only one of whom, Coyne, was at the door when Arnaldo was attempting to close it. Arnaldo also had been charged with assault and battery by means of a dangerous weapon, i.e., the door, on Coyne. At the close of the Commonwealth's evidence, however, the judge entered a required finding of not guilty in Arnaldo's favor on the dangerous weapon charge because there had been no evidence that Arnaldo "struck" Coyne with the door. Accordingly, Arnaldo did not need the jury's assessment of whether the force he applied

to the door amounted to an assault and battery; the judge already had ruled that it did not.[1]

Beyond that, it is virtually inconceivable that failure to give the requested instruction, under whatever rationale, materially affected the outcome of Arnaldo's trial. The absence of a material impact, without more, means that Arnaldo cannot prevail on his claim of ineffective assistance, for we have said many times that

> "[t]o prevail on a claim of ineffective assistance of counsel, a defendant must establish (1) that his representative's performance reflected 'serious incompetency, inefficiency, or inattention . . . falling measurably below that which might be expected from an ordinary, fallible lawyer,' *Commonwealth* v. *Saferian*, 366 Mass. 89, 96-97 (1974); and (2) that these shortcomings deprived him of 'an otherwise available, substantial ground of defence' or otherwise materially affected the outcome of his trial. *Id.* at 96. See *Commonwealth* v. *Fanelli*, 412 Mass. 497, 503 (1992)."

*Commonwealth* v. *Scullin*, 44 Mass. App. Ct. 9, 11 (1997).

Only two percipient witnesses, Officer Coyne and Arnaldo, testified about the events at the door. If the jury believed Arnaldo, then no assault and battery of any kind occurred.[2] If Coyne were believed, whatever force Arnaldo applied to the door was dwarfed by the shove, punches, and kicks Arnaldo administered as Officer Tse headed for the front of the house to

---

[1]That being the case, Arnaldo could have, but did not, request an instruction removing the force he applied to the door as a possible basis for an assault and battery conviction.

[2]Arnaldo testified that he opened the door when the police asked him to, responded to their inquiries by telling them he lived there, but declined their requests for proof that he did so. He then tried to close the door, but Officer Coyne put his foot against it to prevent him from doing so. Arnaldo then asked Coyne to "kindly remove his foot from [his] property," suggested that Coyne and Officer Tse go around to the front of the house to ask his mother who he was, and reached for his wallet. As he reached for his wallet, Arnaldo testified, Coyne reached in through the then open door, grabbed him by the shirt and, with the assistance of Tse, pulled him out into the yard, threw him against the side of the house, hit him with a flashlight, and sprayed him with mace. He then was handcuffed, beaten, and dragged through some bushes before winding up in a police cruiser.

check on Arnaldo's identity.[3] Even if reasonable force may be applied to resist a police officer's illegal intrusion, no reasonable person who accepted Coyne's view of events could conclude that Arnaldo's application of force was reasonable. Consequently, under either view of the evidence, failure to request a reasonable force instruction played no material role in the trial's outcome.

That being the case, I see no reason to use this case as a vehicle for announcing a broad new rule that one's fellow citizens assembled and sworn as jurors have no right — under any circumstances — to assess the reasonableness of a forceful but nonassaultive effort to prevent an unbidden policeman's lawless nighttime entry into a dwelling.[4] Such a rule would strip the jury of any role in deciding whether it was reasonable under any circumstances, for example, to keep the door locked in the face of a policeman's order to unlock it, to lean against a closed door to prevent its forceful opening, to close the door against an

---

[3]Officer Coyne testified that, after Arnaldo declined to provide his name, and while Coyne had his foot in the door, Coyne told Officer Tse to go to the front of the house to inquire of the mother in accordance with Arnaldo's request. After Tse left, Arnaldo tried to push the door closed. Coyne told him to stop. At that point, Arnaldo shoved Coyne in the chest. That prompted Coyne to attempt to place Arnaldo under arrest by grabbing his shirt, entering the vestibule of the apartment as he did so. In response, Arnaldo

> "began hitting Coyne, punching him and kicking him multiple times. Coyne pushed [Arnaldo] against the vestibule wall . . . . [but] could not control [him]. At some point Coyne and [Arnaldo] ended up on the floor; Coyne did not know how they got there. Tse was present again, and with Tse's assistance, Coyne . . . got Arnaldo out of the vestibule into the area between the houses. Coyne . . . was able to get one handcuff on [Arnaldo] but could not get to the other handcuff . . . . Coyne eventually assisted in taking [Arnaldo] to a police car, but recalls that [Arnaldo] was still fighting when he was handcuffed. Coyne also testified that [Arnaldo] was dragging his feet and would not walk under his own power; but kept pulling back."

Coyne's testimony was, of necessity, recreated by stipulation of the Commonwealth and Arnaldo's attorney after some unexplained mishap resulted in its omission from the official recording of the trial.

[4]Although the issue that Arnaldo raises in this case is simply whether use of reasonable force to resist a police officer's unlawful entry into a dwelling is a defense to a charge of assault and battery, the majority's rule goes well beyond that issue and, on its face, would prohibit use of force to resist an unlawful entry whether or not that force produced an assault and battery.

official's outstretched hand, or to stand passively in a doorway to block an illegal entry.

Sanctity of the home is, as the majority recognizes, *ante* at 341, a core principle in our constitutional order. See *Miller* v. *United States*, 357 U.S. 301, 307 (1958); *United States* v. *United States Dist. Ct.*, 407 U.S. 297, 313 (1972); *Commonwealth* v. *Panetti*, 406 Mass. 230, 234 n.5 (1989); *Commonwealth* v. *Marquez*, 434 Mass. 370, 374-375 (2001). That principle produced the rule that the official who enters a dwelling with neither warrant nor justification for warrantless entry is a trespasser, see *Commonwealth* v. *Wright*, 158 Mass. 149, 159 (1893),[5] against whom reasonable, nondeadly force may be used for the purpose of ejectment. See *Commonwealth* v. *Haddock*, 46 Mass. App. Ct. 246, 248-249 (1999). No doubt the realities of modern urban life require some rein on that rule, although the rule's long-standing existence, see *Commonwealth* v. *Dominico*, 1 Mass. App. Ct. 693, 710 (1974), and differences between the potential for violence inherent in dwelling invasions and the potential for violence attending arrests that the Supreme Judicial Court discussed in *Commonwealth* v. *Moreira*, 388 Mass. at 600, leave me in some doubt about this court's power to apply that rein.

Power conceded, though, the real question is not whether the rule should be restrained but to what degree and under what circumstances. The answer clearly implicates important aspects of the relationship between citizen and State. Providing such answers only when a case clearly requires them is the essence of judicial restraint. See *Lockhart* v. *Attorney Gen.*, 390 Mass.

---

[5]I cannot agree that the pertinent language in *Commonwealth* v. *Wright* is dictum. See *ante* at note 13. The defendants in *Wright* had been charged with assault and battery. The victim was a police officer and "deputy fish commissioner" whom the defendants forcibly repelled when he boarded their sloop to arrest them for trading in short lobsters. The court held that the officer had no right to arrest the defendants without a warrant and then, in the passage of pertinence, stated, "If [the officer] had no right to arrest the defendants without a warrant, and he boarded the sloop for that purpose, he was a trespasser, and the question for the jury would be whether the defendants used excessive force in defending themselves and their property." 158 Mass. at 159. In support of that proposition, the court cited three cases, one of which, *Commonwealth* v. *Clark*, 2 Metc. 23 (1840), dealt solely with a person's right to use reasonable force to remove trespassers from his property.

780, 784 (1984); *McMaster, petitioner,* 12 Mass. App. Ct. 972, 973 (1981). See generally, e.g., *Commonwealth* v. *Bartlett,* 374 Mass. 744, 749 (1978); *Ruggieri* v. *Somerville,* 10 Mass. App. Ct. 43, 44 (1980). Cf. Bickel, The Least Dangerous Branch: The Supreme Court at the Bar of Politics 114-115 (1962). I would apply that restraint here, decide the case on narrower grounds that are entirely adequate for its disposition, and save consideration of the broader principle the majority has embraced for the case in which the broader principle, as it now exists or as it is reformulated, must necessarily determine the outcome.